Timothy L. MILLS, Appellant
(Plaintiff),

v.

Guy REYNOLDS and Sid Marks,
Appellees (Defendants).

Levi Harry BUNKER, Appellant
(Plaintiff),

v.

Jim NIGGEMYER, Appellee
(Defendant).

Nos. 89–193, 89–195.

Supreme Court of Wyoming.

July 20, 1992.

---

Gary L. Shockey and Philip White of Spence, Moriarity & Schuster, Jackson, and Robert R. Rose, Jr., and Robert R. Rose, III of Spence, Moriarity & Schuster, Cheyenne, for appellants.

William S. Bon and Patrick T. Holscher of Schwartz, Bon, McCrary & Walker, Casper, for appellees Reynolds and Marks.

Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, and John T. Pappas of Western Law Associates, P.C., Lander, for appellee Niggemyer.

Rodger McDaniel of McDaniel and Tiedeken Law Offices, Cheyenne, for amicus curiae Wyoming AFL–CIO.

Robert W. Tiedeken, and George Santini of Graves, Santini & Villemez, P.C., Cheyenne, for amicus curiae Wyoming Trial Lawyers Ass'n.

Joseph B. Meyer, Atty. Gen., Ron Arnold, Sr. Asst. Atty. Gen., and Larry M. Donovan, Asst. Atty. Gen., for amicus curiae State of Wyoming.

Patrick R. Day of Holland & Hart, Cheyenne, for amici curiae Rocky Mountain Oil and Gas Ass'n, Wyoming Min. Ass'n, Wyoming Trucking Ass'n, Inc., and Associated General Contractors of Wyoming, Inc.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

MACY, Chief Justice.

In the rehearing granted in this case, Appellants Timothy L. Mills and Levi Harry Bunker ask this Court to declare that Wyo.Stat. § 27–14–104(a) (1987) was unconstitutional. We hold that the statute, which, under the Wyoming worker's compensation scheme, granted immunity from suits by co-employees to employees who were acting within the scope of their employment, was unconstitutional because it violated the Wyoming Constitution's guarantee of equal protection.[1]

---

\* Chief Justice at time of rehearing oral argument.

**1.** Section 27–14–104(a) was created during the 1986 Special Session and became effective July 1, 1987:

Mills and Bunker presented the following issues in their original briefs:

1. Does Wyo.Stats.1977, as amended, Section 27–14–104, which grants immunity from suit to coemployees, violate Article 10, Section 4, of the Wyoming Constitution, which provides that "No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person"?

2. Does Wyo.Stats.1977, as amended, Section 27–14–104, which grants immunity from suit to coemployees, violate Article 10, Section 4, of the Wyoming Constitution, which limits the immunities which can be granted pursuant to Worker's Compensation laws to the "employer contributing as required by law" to the compensation fund?

3. Does Wyo.Stats.1977, as amended, Section 27–14–104, which grants immunity from suit to coemployees, violate Article I, Sections 2, 3, 6, 7, 8, 9, and 34, and Article 3, Section 27, which provide for equality among all members of the human race in the right to life, liberty, and the pursuit of happiness; equal political rights, equality in civil rights, and equal privileges among all citizens; due process of law; prohibit absolute and arbitrary uses of power, even by the greatest majority; provide for equal access to the courts for all citizens; provide that the right to a jury trial is inviolate; provide that all laws shall have a uniform operation; and which prohibit special legislation, especially special legislation which calls for the "limitation of civil actions," and which *grants "to any* corporation, association or *individual* ...

*any special exclusive* privilege, *immunity,* or franchise whatever"?

In March 1988, Mills was employed by Dunbar Well Service, Inc. On the day that Mills sustained the injuries which serve as the basis for his suit, Appellee Guy Reynolds, a co-employee, told Mills to paint the hood of a pump truck. Reynolds directed Mills to use specific equipment, including a regulator and an air tank which was provided by Reynolds and Appellee Sid Marks, a co-employee. Reynolds did not supervise Mills or provide him with proper instructions on the tank's use. When Mills and a co-worker opened the tank, the regulator burst, and parts of the regulator and other equipment struck Mills in the face. Mills was severely injured.

The record from the companion case shows that Bunker was employed by Universal Equipment Co. In July 1987, Appellee Jim Niggemyer, Bunker's co-employee, instructed Bunker to remove electrical equipment from a mine site. Bunker was incorrectly informed that electricity to the equipment had been turned off. As he began working, Bunker placed a wrench in an electrical panel. The wrench touched a live electrical bar which delivered an electrical shock to Bunker. Bunker was thrown from a ladder, and he received serious injuries.

Mills filed a complaint, alleging that Reynolds and Marks were negligent and that their negligence was the proximate cause of his injuries. Bunker filed a similar complaint, naming Niggemyer as the defendant. In response, Appellees filed motions for summary judgments, asserting that, as co-employees of Mills and Bunker, they were immune from suit pursuant to

(a) The rights and remedies provided in this act for an employee and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment, but do not supersede any rights and remedies available to an employee and his dependents against any other person.
This section was amended effective July 1, 1989, and now provides:
(a) The rights and remedies provided in this act for an employee *including any joint*

*employee,* and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer *and any joint employer* making contributions required by this act, or *their* employees acting within the scope of their employment, but do not supersede any rights and remedies available to an employee and his dependents against any other person.
(Emphasis indicates amendments.) The amendments did not make a substantive change in this section so as to cause it to become constitutional.

§ 27–14–104(a). Mills and Bunker argued, as they did before this Court, that Appellees were not immune because § 27–14–104(a) was unconstitutional under the Wyoming Constitution. The district court held a motion hearing and decided that Appellees were entitled to summary judgments because § 27–14–104(a) was constitutional and because it provided Appellees with immunity from suit.

On appeal, a majority of this Court upheld the constitutionality of § 27–14–104(a) and affirmed the district court's decision to grant summary judgments in favor of Appellees. *Mills v. Reynolds*, 807 P.2d 383 (Wyo.1991). Writing for the majority, Justice Thomas stated that the constitutionality of § 27–14–104(a) could be sustained by extending the rationale and holding of *Meyer v. Kendig*, 641 P.2d 1235 (Wyo.1982) (upholding the constitutionality of the statute which granted immunity to co-employees unless they were culpably negligent). He also said that the statement, " 'The right of each employee to compensation from the fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law,' " found in Article 10, Section 4 of the Wyoming Constitution did not limit the application of immunity to employers. *Mills*, 807 P.2d at 389. Justice Thomas rejected Appellants' due process arguments by stating that they failed to show how the scheme was unfair and that the statute was not an arbitrary enactment which failed "to promote a legitimate state objective by reasonable means." *Id.* at 395. In addition, Justice Thomas wrote that Appellants were not denied their right to access to the courts because, while the statutory immunity prevented employees from recovering from co-employees who were acting within the scope of their employment, it did not preclude them from going to court. Finally, he stated that § 27–14–104(a) did not violate Appellants' equal protection rights or amount to special legislation because every employee could be subject to the immunity pursuant to Wyo.Stat. § 27–14–103(g) (1987).[2] After the decision was issued, Appellants filed petitions for a rehearing. We granted Appellants' petitions, heard oral arguments, and took the case under advisement.

Before an amendment in 1914, Article 10, Section 4 of the Wyoming Constitution provided:

> No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employe[e] waiving any right to recover damages for causing the death or injury of any employe[e] shall be void.

*Meyer*, 641 P.2d 1235. The 1914 amendment expanded the provision to allow for worker's compensation legislation:

> No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of

---

2. Section 27–14–103(g) provided:

> (g) Any employee not enumerated under this section or not employed in an extrahazardous occupation enumerated under this section may be covered and subject to the provisions of this act and his employment shall be treated as if extrahazardous for purposes of this act, if his employer elects to obtain coverage under this act and makes payments as required by this act. An employer electing coverage may only elect to cover all his employees. The division shall not provide coverage under this subsection sooner than thirty (30) days after receipt of the employer's notice of election. An employer may withdraw coverage elected under this subsection at any time if the elected coverage has been in effect for at least three (3) years and the employer is current on all contributions and payments required under this act.

Amended by 1989 Wyo.Sess.Laws ch. 226, §§ 1 and 2 effective July 1, 1989; repealed by 1991 Wyo.Sess.Laws ch. 190, § 2 effective July 1, 1991.

**52**

injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death.

Wyo. Const. art. 10, § 4 (as amended in 1914). In 1975, the legislature enacted the first provision of the Wyoming Worker's Compensation Act (the Act) which referred to co-employee immunity. 1975 Wyo.Sess. Laws ch. 149, § 1. Wyo.Stat. § 27–312(a) (Supp.1975) provided:

(a) The rights and remedies provided in this act [§§ 27–310 to –388] for an employee and his dependents for injuries incurred in extra hazardous employments are in lieu of all other rights and remedies against any employer making contributions required by this act, or his employees acting within the scope of their employment unless the employees are *grossly negligent,* but do not supersede any rights and remedies available to an employee and his dependents against any other person.

(Emphasis added.) In 1977, the legislature changed the degree of negligence from grossly to culpably. *See* Wyo.Stat. § 27–12–103(a) (1977).[3]

In *Meyer,* this Court sustained the constitutionality of the grant of immunity for co-employees unless they were "culpably negligent." In response to several constitutional arguments, this Court first held that the statute permissibly limited a "cause of action available for a recovery" and not damages in violation of Article 10, Section 4 of the Wyoming Constitution. *Meyer,* 641 P.2d at 1239. Second, the *Meyer* Court held that the legislation did not violate employees' equal protection rights or amount to special legislation because it had the

same effect upon all employees in similar circumstances and because the classification was reasonable in view of the State's objectives ("harmony among employees, the maintenance of a sound worker's compensation fund, and the overall purpose and philosophy behind the Worker's Compensation Act." *Id.* at 1240). Third, this Court held that the appellant was denied success in court but that she was not denied her constitutional right to access to the courts. *Id.* at 1241. Finally, the *Meyer* Court held that the statute did not violate Article 10, Section 4 of the Wyoming Constitution. *Id.*

In 1986, the following two sentences were added to Article 10, Section 4:

Subject to conditions specified by law, the legislature may allow employments not designated extrahazardous to be covered by the state fund at the option of the employer. To the extent an employer elects to be covered by the state fund and contributes to the fund as required by law, the employer shall enjoy the same immunity as provided for extrahazardous employments.[4]

In the same year, the legislature again expanded the immunity for co-employees. Section 27–14–104(a) provided employees with complete immunity from suit by co-employees if the employees were acting within the scope of their employment. That immunity served as the basis for the constitutional challenge in this case.

Because we hold that § 27–14–104(a) violated the equal protection guarantees embraced in the Wyoming Constitution, we decline to address the other constitutional issues presented for our review. A foundation for equal protection is located in the following provisions of the Wyoming Constitution:

In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal.

Wyo.Const. art. 1, § 2.

Since equality in the enjoyment of natural and civil rights is only made sure

---

**3.** Repealed and recreated as § 27–14–104(a) by 1986 Wyo.Sp.Sess.Laws ch. 3, § 3 effective July 1, 1987.

**4.** The Act was amended in 1986 to provide for the election stated in Article 10, Section 4.

through political equality, the laws of this state affecting the political rights and privileges of its citizens shall be without distinction of race, color, sex, or any circumstance or condition whatsoever other than individual incompetency, or unworthiness duly ascertained by a court of competent jurisdiction.

Wyo. Const. art. 1, § 3.

All laws of a general nature shall have a uniform operation.

Wyo. Const. art. 1, § 34.

The legislature shall not pass local or special laws in any of the following enumerated cases, that is to say: For ... limitation of civil actions; ... granting to any corporation, association or individual ... any special or exclusive privilege, immunity or franchise whatever.... In all other cases where a general law can be made applicable no special law shall be enacted.

Wyo. Const. art. 3, § 27. Generally, equal protection " 'mandates that all persons similarly situated shall be treated alike, both in the privileges conferred and in the liabilities imposed.' " *Small v. State*, 689 P.2d 420, 425 (Wyo.1984), *cert. denied*, 469 U.S. 1224, 105 S.Ct. 1215, 84 L.Ed.2d 356 (1985) (quoting *State v. Freitas*, 61 Haw. 262, 602 P.2d 914, 922 (1979)). The concept does not require, however, that the legislature treat every state citizen equally. *Small*, 689 P.2d 420. Instead, traditional equal protection principles operate to ensure that legislatively created classifications bear a rational relationship to a legitimate state concern. *Kautza v. City of Cody*, 812 P.2d 143 (Wyo.1991); *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). The rational relationship test is utilized when an ordinary interest is involved. *Hays v. State ex rel. Wyoming Workers' Compensation Division*, 768 P.2d 11 (Wyo.1989). If a fundamental right is implicated or if the classification is inherently suspect, we employ a strict scrutiny standard. Under the strict scrutiny test, the classification must be closely scrutinized to determine if it is necessary to achieve a compelling state interest. In addition, the burden is on the State to demon-

strate that it could not use a less onerous alternative to achieve its objective. *Id.*; *O'Brien v. State*, 711 P.2d 1144 (Wyo. 1986); *Washakie County School District Number One v. Herschler*, 606 P.2d 310 (Wyo.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980).

In this case, the legislature has created classifications at two levels. *See State v. Laude*, 654 P.2d 1223 (Wyo.1982) (discussing how a court can identify classifications). First, it has taken the entire group of individuals who have suffered or who will suffer from the tortious conduct of others and carved out an exception, without express constitutional authority, for co-employees. Second, it has created a class of employees. Under the Act, employees who were involved in extrahazardous employments were automatically within the purview of the Act. Section 27–14–104(a). Employees who were not involved in extrahazardous employment could have been subject to the provisions of the Act if their employers had elected to participate. Section 27–14–103(g). Given that only some employees were automatically covered by the Act and that the determination of whether employees not involved in extrahazardous employment were covered by the Act was made by employers, we cannot concur that:

> Because every worker in Wyoming now *may* receive an equal benefit under the act with respect to the protection afforded the co-employee, there seems no prospect of supporting the claim of a deprivation of equal protection.

*Mills*, 807 P.2d at 397 (emphasis added). The Act created classifications which treat similarly situated people differently.

Next, we must determine the level of scrutiny which applies to this case. Because neither the class of employees covered by the Act nor the class of those who suffer due to the tortious conduct of others is inherently suspect, we must examine the nature of the interest involved to determine whether § 27–14–104(a) infringed upon the fundamental right to access to the courts. A fundamental right is a right which the constitution explicitly or implicitly guaran-

tees. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). *See also Richardson v. Carnegie Library Restaurant, Inc.,* 107 N.M. 688, 763 P.2d 1153 (1988); and *Bryant v. Continental Conveyor & Equipment Co., Inc.,* 156 Ariz. 193, 751 P.2d 509 (1988) (en banc). Article 1, Section 8 of the Wyoming Constitution provides:

> All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. Suits may be brought against the state in such manner and in such courts as the legislature may by law direct.

At a very minimum, that constitutional provision implicitly guarantees that every person has the right to meaningful access to the courts if he or she is injured. While this Court has not previously declared that the right to access to the courts is a fundamental right, we have referred to Article 1, Section 8 as securing a right to access. *White v. State,* 784 P.2d 1313 (Wyo.1989); *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980), *appeal after remand,* 632 P.2d 925 (Wyo.1981); *Mull v. Wienbarg,* 66 Wyo. 410, 212 P.2d 380 (1949).[5] We now hold that the right to access to the courts is a fundamental right pursuant to Article 1, Section 8.[6]

Section 27–14–104(a) infringed upon the right to access to the courts because it granted complete immunity from suits by co-employees to employees who were acting within the scope of their employment. In other words, Mills' and Bunker's access to the courts was denied because they were precluded from going to court and recovering for injuries caused by the tortious conduct of their co-employees. The version of § 27–14–104(a) which served as the basis for the constitutional challenge in *Meyer* is

distinguishable as it did not give complete immunity to co-employees. That statute prescribed a level of proof which an employee must establish to recover from a tortious co-employee. It did not completely deny a meaningful access to the courts to the injured employee.

■ Since we have determined that § 27–14–104(a) infringed upon a fundamental right, we must employ our strict scrutiny analysis. The burden is on Appellees to defend the constitutionality of the statute. *Washakie County School District Number One,* 606 P.2d 310. They must demonstrate "a compelling interest ... which is served by the challenged legislation and which cannot be satisfied by any other convenient legal structure." *Id.* at 335. While Appellees and those who submitted briefs on their behalf have not argued that § 27–14–104(a) was supported by a compelling state interest, they have asserted that the statute addressed the following legitimate state concerns: (1) the assurance of compensation for injured workers in a timely manner; (2) the elimination of the risk of suits; (3) the promotion of harmony among workers; (4) the maintenance of a financially stable worker's compensation fund; and (5) the prevention of increased insurance costs. We recognize that those concerns may be legitimate and that they may be addressed by appropriate legislation. *See Meyer,* 641 P.2d 1235. However, they do not correspond with any compelling interests which this Court has previously identified. *King v. State,* 810 P.2d 119 (Wyo. 1991) (compelling interest in assuring that a prosecutor is countered at trial by a defense attorney who is aggressive and effective enough to make the adversarial process perform as designed); *RHF v. RMC (Adoption of JLP),* 774 P.2d 624 (Wyo.1989) (compelling state interest in

---

5. In *Mull,* this Court held that Article 1, Section 8 did not abrogate a common-law rule (barring a suit for personal injuries against the representative of a deceased tort-feasor) which existed at the time the Wyoming Constitution was adopted.

6. In *Troyer v. State Department of Health and Social Services, Division of Vocational Rehabilitation,* 722 P.2d 158 (Wyo.1986), this Court held

that a tort victim did not have a fundamental right to sue the State. That holding is supported by the last sentence of Article 1, Section 8: "Suits may be brought against the state in such manner and in such courts as the legislature may by law direct." The case at bar is distinguishable because it involves a suit against individuals and not against the State.

protecting the welfare of children); *Nowack v. State*, 774 P.2d 561 (Wyo.1989) (compelling public interest in punishment for crimes); *Scadden v. State*, 732 P.2d 1036 (Wyo.1987) (compelling interest in regulating sexual contacts between persons when one of those persons does not consent or lacks the capacity to consent); *Coyne v. State ex rel. Thomas*, 595 P.2d 970 (Wyo. 1979) (compelling state interest in preventing conflicts of interest in public employment). We hold that the state concerns do not justify the legislature's infringement upon a fundamental right.

In addition, we do not perceive that complete immunity for co-employees who were acting within the scope of their employment was the least onerous means by which the objective of the Act could be achieved. Section 27–14–104(a) precluded employees from bringing suit against co-employees who committed intentional torts while they were acting within the scope of their employment. In essence, that provision permits an employee to intentionally harm a co-employee without being concerned about civil liability. While such immunity may slightly decrease the number of lawsuits filed by employees and increase the number of employees who will be guaranteed compensation, it severely burdens the State's undeniable interest in prohibiting an individual from committing an intentional tort without the possibility of liability. *See Meyer*, 641 P.2d 1235; *Markle v. Williamson*, 518 P.2d 621 (Wyo.1974) (stating that Wyoming's worker's compensation scheme is a form of insurance); and *Blankenship v. Cincinnati Milacron Chemicals, Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572, *cert. denied*, 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110 (1982) (stating that insurance against intentional torts is against public policy). Harmony in the work place may actually be enhanced if an employee knows that the worker next to him will be legally accountable for some of his actions, and,

even though the parties have not presented facts concerning insurance costs and the financial status of the worker's compensation fund, we would be hard pressed to hold that those objectives could be attained only under a scheme which provided complete immunity to employees.

In summary, the legislature's grant of complete immunity to co-employees, which includes immunity for intentional acts and for willful and wanton misconduct, infringed upon the fundamental right to access to the courts.[7] Such an infringement triggers application of the strict scrutiny test. Under that test, we are unable to identify a compelling state interest which would permit complete immunity for co-employees. We hold that § 27–14–104(a) was unconstitutional.

■ This decision applies retroactively. We have previously held:

"The general rule from time immemorial is that the ruling of a court is deemed to state the true nature of the law both retrospectively and prospectively. In civil cases, at least, constitutional law neither requires nor prohibits retroactive operation of an overruling decision, but in the vast majority of cases a decision is effective both prospectively and retrospectively, even an overruling decision. Whether the general rule should be departed from *depends on whether a substantial injustice would otherwise occur.*"

*Harvey By and Through Harvey v. General Motors Corporation*, 739 P.2d 763, 765 (Wyo.1987) (quoting *Malan v. Lewis*, 693 P.2d 661, 676 (Utah 1984) (emphasis added and citations omitted)). We detect no substantial injustice which would require us to depart from the general rule. By our decision being applied retroactively, as well as prospectively, the statute of limitations is tolled from July 1, 1987 (the date on which

---

7. In *Mayflower Restaurant Company v. Griego*, 741 P.2d 1106, 1115 (Wyo.1987) (quoting *Weaver v. Mitchell*, 715 P.2d 1361, 1370 (Wyo.1986)), we gave the definition of willful and wanton misconduct:

"Willful and wanton misconduct is the intentional doing of an act, or an intentional failure to do an act, in reckless disregard of the consequences and under circumstances and conditions that a reasonable person would know, or have reason to know that such conduct would, in a high degree of probability, result in harm to another."

§ 27–14–104(a) became effective) until the date of this decision.

CARDINE, J., filed a specially concurring opinion in which URBIGKIT, J., joined.

URBIGKIT, J., filed an opinion concurring in the majority opinion and joining in Justice CARDINE's specially concurring opinion.

THOMAS, J., filed a dissenting opinion in which GOLDEN, J., joined.

GOLDEN, J., filed a dissenting opinion in which THOMAS, J., joined.

CARDINE, Justice, specially concurring, with whom URBIGKIT, Justice, joins.

I have reviewed in depth our prior decision, the history of law preceding that decision, the briefs, and arguments and conclude that I was wrong in my vote then to affirm. Whether being wrong and admitting a mistake is a virtue or a detriment, I leave to debate. For me, it is enough that I do what the law and history tell me is the right thing to do.

I concur in the result reached by the majority only because the opinion of the court departs so far from the holdings of our prior cases as to be unacceptable. I continue to accept and adhere to the rationale and holding of *Meyer v. Kendig*, 641 P.2d 1235 (Wyo.1982). For example, in *Meyer* we held that the right of an employee to sue his coemployee who caused personal injury or death was not a fundamental right but "an ordinary interest" only; that when an ordinary interest is involved, we said we merely examine to determine whether there is a rational relationship between the classification made by the statute and a legitimate state objective. The court now, in this opinion considering precisely the same question, holds that the same right of an employee to sue a coemployee is "a fundamental right" and that we must apply a "strict scrutiny analysis" which requires demonstration of "a compelling interest * * * which is served by the challenged legislation and which cannot be satisfied by any other convenient legal structure." Maj. op. at 54. The court in

each case was applying the same Art. 10, § 4 of the Wyoming Constitution to enacted legislation which concerned litigation between employees and coemployees of the same employer. In *Meyer* we said the right of an employee to sue a coemployee was an ordinary interest only. Now the court is prepared to say that the same right is a fundamental right. I cannot brush aside our large body of accumulated law on this subject in such a cavalier fashion. Therefore, I would hold only that W.S. 27–14–104(a) is unconstitutional because it abolishes a coworker's claim for injury or death damages contrary to Art. 10, § 4 of the Wyoming Constitution which, as originally written and still in existence today in its first two sentences, provides as follows:

> No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void.

Appellants, contending that W.S. 27–14–104(a) is unconstitutional, reason that damages are an element of the tort cause of action to recover for injury or wrongful death; that the statute at issue here eliminates the tort cause of action and therefore eliminates damages; that by eliminating the right to recover damages, the legislation "limits the amount of damages recoverable for injury or wrongful death"; and that such a limit upon these damages is prohibited by Art. 10, § 4 of the constitution.

Appellees contend that Art. 10, § 4 of the Wyoming Constitution only prohibits a law limiting the damages recoverable and does not deal with the cause of action at all; that the prohibition in the constitution limiting the amount of recoverable damages does not prohibit the elimination of the cause of action to recover these damages "for causing the injury or death of any person."

We are not helped in resolving the question presented by the fact that holding the statute constitutional will eliminate the right of an employee to sue a coemployee

who intentionally injures or kills the employee. The constitution and legislation as presently written allow for precisely that result for the employer. Thus, if the employer is an individual and intentionally injures his coemployee, the employer is immune from suit. The only recovery available to the employee is that provided by worker's compensation.

Having reviewed the issues presented by the parties, the history of our worker's compensation legislation, the extensive scholarly briefs, and earnest arguments of counsel, we arrive back at the beginning, still seeking to determine a simple question: What did the framers of our constitution intend when they originally wrote into our constitution Art. 10, § 4?

We begin with a look at life as it was during the summer and fall of 1889 when the delegates to our constitutional convention met in Cheyenne to write a constitution for what was to become the state of Wyoming. The economy of the territory of Wyoming consisted primarily of ranching and agriculture. Transportation was by saddle horse or horse and buggy. The railroad had arrived a short time before. There was some mining. Delegates to the convention were predicting a population of ten million for the state of Wyoming. The few business entities in the territory of Wyoming were well-financed, powerful entities. The framers of our constitution were intent upon protecting the right of the individual to recover compensation for injury or death caused by others.

In *Meyer v. Kendig*, 641 P.2d 1235, we said that Art. 10, § 4 of the Wyoming Constitution prohibits limits upon the amount of damage recoverable for causing injury or death of a person, and that the statute being considered in *Meyer* was constitutional since it did not limit the amount of recoverable damage. We said the prohibition upon limitation of damage and right to recover were dealt with separately, reasoning that the framers of the constitution in the first sentence of Art. 10, § 4 intended only to prohibit a limit upon the amount of recoverable damage and in the second sentence discussed the right to recover. It

is suggested that, because damages and the right to recover are separately discussed in the constitution, that the limiting bar applies only to damage, *ergo* the right to recover may be abolished. That construction of Art. 10, § 4 is incorrect.

Both the first and second sentences of Art. 10, § 4 concern damages. The first sentence prohibits a limitation on the *amount of damages* recoverable for causing death or injury of any person. The second sentence makes void any contract or agreement by any employee waiving any *right to recover damages* for causing injury of any employee and nothing more. The clear intent of the framers of our constitution, as appears from the debates at the constitutional convention, was to preserve the right to recover damages for injury or wrongful death by any person. Thus, in the debates one of the delegates said:

As I understand this, this is to reach what we originally call the old ironclad agreement. I can see the object of this because I have worked on all the railroads west of Chicago I might say, and they have all adopted a policy that this here touches upon. It was called the ironclad agreement, by which a man when he entered the employ of the company agreed to release the company from all liability for any accident that might occur to him, no matter whether the fault was directly traceable to the company or not. Now if I understand the sense of this File No. 70 it is to keep us from having any such an introduction in this state of any ironclad agreement between any railroad company and its employes, and I believe it should pass. It is to protect the poor man. And I wish to add, so far as the law is concerned, I don't care what the law is, I have heard so much about law on the floor of this house that I am disgusted with it. It is justice we want, and mercy with justice. I think the case in this town today pending before the courts is enough. A man paralyzed, with a large family to support, his body and mind almost destroyed in the service of the company, and I would like to know what the law done for him. The case has been carried to the supreme

court, but the poor man has got nothing as yet. That is law, I suppose. I am sorry to bring this matter up, but everybody in town knows it, and knows too that the cause of that man's injury was due directly to the negligence of the overseer of the job he was working on. The man was poor, and he got but poor treatment, and everybody knows it. *Journal and Debates of the Constitutional Convention, State of Wyoming,* Mr. Reed at 447–48 (1893).

Thus, the first sentence prohibits any enactment limiting the amount of recoverable damages and the second sentence makes void any contract or agreement by an employee waiving any right to recover "damages." The clear intent of the delegates to the constitutional convention in writing our constitution was to preserve the right to recover damages for injury or wrongful death. The right to recover these damages is preserved by preserving the cause of action which is the vehicle for recovery, subject always to such reasonable procedural requirements, substantive restrictions, and limitation periods within which to bring the said action. Legislation providing for comparative negligence, eliminating joint and several liability, and prescribing limitation periods within which to bring the action passes constitutional muster as reasonable limitations upon the action.

The struggle between the variant interests involved in worker's compensation has been exaggerated by the confusion in application of legal principles. We have said that worker's compensation is industrial accident insurance. Actions between employer and employee sound in contract. Actions, however, between employees and coemployees and third parties are in tort. The resentment on the part of business results from bewilderment over what kind of industrial accident insurance they have purchased. The corporation is immune, but the people who act for the corporation are not. Corporations can act only through people. Ordinarily the corporation causes injury or death to its employee as a result of the acts of its employees, and its responsibility is vicarious only. As a result of worker's compensation, the corporation is insulated from liability, *i.e.,* is immune. Yet its employees who acted on behalf of the corporation in the scope of their employment causing injury or death to a coemployee are liable for the very thing for which the corporation purchased industrial accident insurance. The end result of the above is that the corporation purchased an industrial accident insurance for itself, known as worker's compensation, and then must purchase another policy insuring the same activity to provide protection to its employees—thus the struggle by businesses and legislators to right what they see as an incorrect result. Perhaps the appropriate answer is there be a quid pro quo; that if the coemployee is to have immunity, additional premiums be paid worker's compensation to provide industrial accident insurance for coemployees with a corresponding increase in benefits to injured employees awarded benefits under worker's compensation. The above tells us the reason for continued efforts to amend the worker's compensation laws to extend immunity to coemployees but does not dispose of the question here presented, *i.e.,* the constitutionality of W.S. 27–14–104(a).

I would hold that W.S. 27–14–104(a) granting total immunity to coemployees causing injury or death of another eliminates the right to recover damage and therefore limits the amount of damage to be recovered. The statute therefore violates the prohibition against limiting the amount of damages to be recovered and is consequently unconstitutional and void. If the right to recover damages for injury or wrongful death caused by a coemployee is to be eliminated, it must be done by constitutional amendment. This was the procedure deemed necessary and followed when the right of recovery against an employer was totally eliminated. The constitutional amendment allowing total immunity for an employer contributing to the worker's compensation fund was approved and adopted by vote of the citizens of the state of Wyoming. Additional total immunity, beyond that granted an employer contributing to the fund, may only follow an appropriate constitutional amendment authoriz-

ing such immunity. That is as it ought to be. The citizens of this state ought to decide whether society benefits and the public is served by such additional grant of immunity.

URBIGKIT, Justice, concurring in the opinion of Chief Justice MACY and joining in the decision provided by Justice CARDINE in his special concurrence.

The divisiveness of the constitutional issue presented in these cases and the basic importance of these appeals not only to justice and the Wyoming court system but to every citizen of this state is identified by the fact that each Wyoming Supreme Court Justice will have written in contribution to this decision. Since I wrote in dissent to disclose the constitutional infirmity in *Mills v. Reynolds*, 807 P.2d 383 (Wyo.1991), before this court granted rehearing, I find it necessary only to synchronize the majority view.

In constitutional contemplation, this dialogue travels through Wyoming law far wider than today's issue considering denied justice for injured workers. Our understanding has to be addressed here about the judicial responsibility to protect constitutional guarantees and assure some access for each citizen to enter the courthouse and seek justice for injuries sustained from misconduct, gross negligence or intentional harm committed by another. *Mills/Bunker* are not remedy cases involving public policy directive legislation; these cases require us to consider the propriety of a total elimination of any right of access for court relief after injury.

Despite this broader perspective, it is important to recall on this emotional and significant philosophical litigative dispute what I wrote in prior dissent:

In simplest terms, the end result of W.S. 27–14–104(a) and the majority holding in these cases is that everyone loses except the wrongdoer. The injured employee loses because he is denied the opportunity to recover damages for injuries caused by a culpably negligent or intentionally tortious co-employee. The employer loses because he is unable to minimize his premium contributions to the Worker's Compensation fund and because employees protected with absolute immunity are less motivated to share responsibility for a safe work place. The Worker's Compensation fund loses because it is unable to recover benefit payments otherwise due through the Act's third-party recovery lien provision. Ultimately, the citizens of Wyoming lose because the legislature and the majority of this court abandon the Wyoming Constitution and extinguish protected rights. The only overt winner is a criminal, culpably negligent or intentionally tortious co-employee who escapes liability and receives opportunity carte blanche to act with impunity. The covert winner is the general insurance liability carrier whose claim costs are reduced and whose actual coverage is compressed.

I would find W.S. 27–14–104(a) unconstitutional and would reverse the district court's grant of summary judgment. By so doing, I would open the courthouse doors to employees injured at the hands of culpably negligent, criminal or intentionally tortious co-employees. It is constitutionally impermissible, in my opinion, to legislate a more dangerous work place by eliminating rights to justice for the laborers. We reverse a century of industrial effort to accomplish work place health and safety.

\*       \*       \*       \*       \*       \*

An employee injured at the hands of his criminal, culpably negligent or intentionally tortious co-employee constitutionally should be given an opportunity to recover damages for his physical harm. Because W.S. 27–14–104(a) clearly violates protected rights within the Wyoming Constitution, I [concur now in opposition to any] compulsion exclusion of justice and near intentional invitation for death or serious injury to stand at the shoulder of employees who are engaged in service in the extrahazardous Wyoming work places.

*Mills*, 807 P.2d at 399–410 (footnotes omitted).

I concur with the decision advanced in the court's opinion authored by Chief Justice Macy. In eliminating an injured employee's cause of action against an intentionally tortious, culpably negligent or criminal co-employee acting within the scope of his employment, Wyo.Stat. § 27–14–104(a) (1991) will violate the Wyoming Constitution's guarantee of equal protection by denying an injured employee the right to redress a wrong and recover damages. In so deciding, I agree with Chief Justice Macy that the right to access to the courts is and always has been a fundamental right guaranteed under Wyo.Const. art. 1, § 8.

I completely join with Justice Cardine in his special concurrence, except in belief that there is more than one reason to hold Wyo.Stat. § 27–14–104(a) to be unacceptably contrary to guarantees provided in the Wyoming constitution.[1] I explicitly join in that portion of his special concurrence which sets forth the proposition that the Wyoming State Legislature could not adopt Wyo.Stat. § 27–14–104(a) in the absence of an amendment to Wyo. Const. art. 10, § 4. *See Mills*, 807 P.2d at 406–07, Urbigkit, C.J., dissenting. In creating that constitutional provision, the intent of the framers of the Wyoming Constitution was clearly to preserve the right to recover damages for wrongful injury or death. Although amended on two different occasions in this century to permit adoption and subsequent expansion of worker's compensation coverage, Wyo. Const. art. 10, § 4—as it exists at this time—still does not countenance legislation which effectively allows intentional injury or death to occur without liability. Subject only to the closely limited immunity for the employer, that constitutional provision continues our founder's determination to protect an individual from becoming a societal discard by legislative pronouncement.

It should come as no surprise that I view with antagonism and deep adjudicatory concern any conceptualization that the opportunity was provided in the Wyoming Constitution, despite articles 1 and 2 of its text defining declaration of rights and separation of power, for either the legislature by legislation or the judiciary by acquiescence to lock the doors and throw away the key and close down the courthouse to deny access to justice to anyone who accepts and believes:

**§ 1. Power inherent in the people.**

All power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety and happiness; for the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish the government in such manner as they may think proper.

**§ 2. Equality of all.**

In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal.

**§ 7. No absolute, arbitrary power.**

Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority.

**§ 8. Courts open to all; suits against state.**

All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay. Suits may be brought against the state in such manner and in such courts as the legislature may by law direct.

Wyo. Const., art. 1, §§ 1, 2, 7, and 8.

As I will discuss more fully at a later time in another case, the "freemen" provision in Wyo. Const. art. 1, § 7 is particular to Wyoming by constitutional inclusion almost alone among the several states. No one has otherwise answered for me how a person can be free if authoritative government denies opportunity to justice by denial of access to the courts. *White v. State*, 784 P.2d 1313, 1322 (Wyo.1989), Urbigkit,

1. Starting from the last sentence of the second paragraph provided in Justice Cardine's special concurrence, by striking the fifth word "only," I

totally concur and agree with his thoughtful and cogent analysis and conclusion.

J., dissenting; *Hoem v. State,* 756 P.2d 780 (Wyo.1988).

A major neglect and defect in interpretive understanding of the Wyoming Constitution is to assume some predisposing meaning to it which may have recently been expostulated by a totally separate court system. The United States Constitution is barely mentioned in debates among those who were present in 1889 to write the Wyoming Constitution, and the first ten amendments to the United States Constitution were not mentioned at all. In that time, the drafters of the Wyoming Constitution were creating rights for their frontier society in Wyoming to be protected under the Wyoming Constitution. The Washington, D.C.–governed Bill of Rights meant little for protection of citizens under laws and activities to be enacted or enforced through Wyoming state government. Decades would come and go before selective incorporation would add, if it did, protection under the Fourteenth Amendment to deter incursion against individual rights by acts of the state of Wyoming and its agents.

In *State v. Peterson,* 27 Wyo. 185, 213, 194 P. 342, 350 (1920), this court held that the search and seizure provisions of the United States Constitution did not constrain the state:

As to the Fourth Amendment to the Constitution of the United States, it has been held to operate solely on the federal government, its courts and officers, and not as a limitation upon the powers of the states. * * * The state Legislature, officers and courts being limited in this respect by the provisions of the state Constitution.

Subsequently, the United States Supreme Court, under the due process clause of the Fourteenth Amendment, has held Bill of Rights protections apply to the states. *See, e.g., Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (Sixth Amendment right to counsel); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (exclusionary rule); *Wolf v. People of the State of Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (Fourth Amendment search and seizure); *Near v. State of Minnesota ex rel. Olson,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931) (First Amendment freedom of press); and *Fiske v. State of Kansas,* 274 U.S. 380, 47 S.Ct. 655, 71 L.Ed. 1108 (1927) (First Amendment freedom of speech).

Moreover, as we trace back into our history of constitutional heritage, we find that the Magna Charta and the Declaration of Independence were very familiar to and closely considered in philosophy by that highly talented group of relatively young Wyoming men. The rights of freemen, Wyo. Const. art. 1, § 7, did have a place in our heritage.

We have also granted to all the free men of Our Kingdom, for Us and Our heirs for ever, all the liberties underwritten, to have and to hold to them and their heirs of Us and Our heirs.

Magna Charta.

We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed * * *.

The Declaration of Independence para. 2 (U.S.1776).

In my opinion, the Wyoming Constitution explicitly directs that an employee who is injured at the hands of his culpably negligent, intentionally tortious or criminal co-employee should have an opportunity to recover damages for his physical harm. "Wyo. Const. art. 1, § 8, when read in conjunction with Wyo. Const. art. 10, § 4, forbids unlimited legislative discretion to close the doors of the courts in this state to workers intentionally injured by co-employees." *Mills,* 807 P.2d at 401–02, Urbigkit, C.J., dissenting (footnote omitted).

Differing from Justice Golden in his dissent, I cannot accept a neutered capacity and adjudicatory indignity in application to the grand promise and intendment of Wyo. Const. art. 1, § 8 permitting extraction of the concept that the clear constitutional

command really provides no guarantee of protectable interest to the Wyoming litigant. Overtly, *Hoem*, 756 P.2d at 784, Thomas, J., specially concurring, is explicitly directed to the contrary. My continued belief is also expressed in *Cooney v. Park County*, 792 P.2d 1287, 1303 (Wyo.1990) (Urbigkit, J., dissenting), *cert. granted and judgment vacated* — U.S. ——, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991) and *White*, 784 P.2d at 1354, Urbigkit, J., dissenting.

Even, however, if we give full credence to some conception that Wyo.Const. art. 1, § 8 provides *no* limitation on legislative authority to extinguish basic rights of men, women, children and the elderly to recover from injury, I would still find that the Wyoming Constitution by other sections precludes the special interest legislation found in Wyo.Stat. § 27–14–104(a) by selectively eliminating an injured worker's right for access to the courts.[2] Justice Cardine demonstrated that Wyo.Const. art. 10, § 4 cannot be circumvented by "granting total immunity to coemployees causing injury or death [to eliminate] the right to recover damage and [limit] the amount of damage to be recovered." Wyo.Const. art. 1, § 8, whether debased or not, does not determine the Wyo.Const. art. 10, § 4 preclusion against legislative attack on a citizen's right to recover damages for sustained injury.

My objection to structural amendments to the Wyoming constitutional guarantees present in our Bill of Rights, does not, however, end at the doorstep of even Wyo. Const. art. 1, § 8 and Wyo. Const. art. 10, § 4. I continue to believe that at the Wyoming constitutional convention, there in that hot summer of 1889, that a most scholarly, extremely well educated and thoughtful group had an understanding of government and a concern for providing clearly stated, carefully designed and separately enumerated constitutional guarantees.

The question we again ask is whether the legislature can totally eliminate a right for recovery to a co-employee whether the charged conduct was accidental, negligent, grossly wrongful, or even intentionally committed physical injury. Clearly, that right to legislate in such a fashion is *not* provided by the worker's compensation employer exception added by electoral vote on November 3, 1914:

> The right of each employee to compensation from the fund shall be in lieu of and shall take the place of any and all rights of action *against the employer* contributing as required by law to the fund in favor of any person or persons by reason of the injuries or death.

Wyo. Const. art. 10, § 4 (emphasis added).

Where then is the authority for deprivation of rights possibly accorded to the legislature for enactment of Wyo.Stat. § 27–14–104(a)? Finding nowhere, I continue to believe the statute is constitutionally unpalatable under Wyo. Const. art. 1, § 1, power inherent in the people; Wyo. Const. art. 1, § 2, equality of all; Wyo. Const. art. 1, § 6, due process of law; Wyo. Const. art. 1, § 34, uniform operation of general law; Wyo. Const. art. 3, § 27, special and local laws prohibited; but also in particular, Wyo. Const. art. 1, § 7, "[a]bsolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

No one would suggest that a rancher's right to live on a ranch is subject to a legislative preclusion nor that the educator's occupation can be arbitrarily abolished for all of those found in the class. The guest statute ended by conclusion un-

---

2. It is frequently difficult, if not totally impossible, to conceptualize how a defined "fundamental right" really differs from an "important substantive right" without a comprehensive case-by-case analysis. It seems that the difference is normally the result of a determination that the right will not be protected against legislative incursion and, as a consequence, in order to determine the test for evaluation, it is defined as only substantive and consequently not enforceable. The injured co-worker who suffers permanent disability will hardly know the difference between a substantive and a fundamental right except whether recovery is denied. *See Carson v. Maurer*, 120 N.H. 925, 424 A.2d 825 (1980) and *Opinion of the Justices*, 113 N.H. 205, 304 A.2d 881 (1973). Whether I find the interest addressed here to be fundamental or an important substantive right, I would reject constitutional efficacy to eliminate access to the courts through this legislation.

der Wyo. Const. art. 1, § 34, the uniformity clause; *Nehring v. Russell,* 582 P.2d 67 (Wyo.1978), that its discrimination could not be accepted constitutionally. So likewise, I fail to find in the basket of protections carefully produced and supplied by our constitutional founding fathers of Wyoming that a laborer's right to claim damage from others than the employer can ever be denied by prohibiting legislation.

Alternatively, in further answering the question that the statutorily created denial of court access cannot be constitutionally justified, I would add support for this decision from the action of the state constitutional convention in establishing the obligation of society to protect the state work force. We should recognize in the terms of Wyo.Stat. § 27–14–104(a), as what it is to be—an unsafe work place act—that there is preclusive violation of two other constitutional provisions, Wyo.Const. art. 1, § 22, protection of labor—"[t]he rights of labor shall have just protection through laws calculated to secure to the laborer proper rewards for his service and to promote the industrial welfare of the state"—and Wyo. Const. art. 19, § 7:

It shall be unlawful for any person, company or corporation, to require of its servants or employees as a condition of their employment, or otherwise, any contract or agreement whereby such person, company or corporation shall be released or discharged from liability or responsibility, on account of personal injuries received by such servants or employees, while in the service of such person, company or corporation, by reason of the negligence of such person, company or corporation, or the agents or employes thereof, and such contracts shall be absolutely null and void.

Wyo.Stat. § 27–14–104(a) actually violates the protected right to redress injuries in contravening three foundational precepts of the Worker's Compensation Act. First, the statute promotes a less safe and less harmonious work place environment because fellow employees may by gross negligence or intentional act injure with impunity and everyone remains at risk subject only to what can be done for self-protec-

tion. An unsafe work place not only creates significant unnecessary inefficiencies, but by the stress and strain created adds further danger to everyone present. Second, the statute serves to undermine the financial solvency of the Worker's Compensation fund because it eliminates a potential source of reimbursement for the coffers under Wyo.Stat. § 27–14–105(a) (1991) (the fund is entitled to reimbursement for payments made to an injured employee covered under the Act). Finally, because Wyo. Stat. § 27–14–104(a) eliminates viable incentives for work place safety, the more-likely-to-be injured worker will bear the brunt of his injuries while his severely negligent or intentionally tortious co-employee escapes liability. *Mills,* 807 P.2d at 404–06, Urbigkit, C.J., dissenting.

We should understand that these appeals have nothing to do with immunity of employers. If co-employee liability issues were to have been added points of discussion in adoption of the constitutional amendment, they would have been included by statement of Governor Joseph M. Carey in his address to the Twelfth Wyoming State Legislature and no doubt would then have been added to the amendment text to provide additional exclusionary provision in the legislatively proposed constitutional amendment as an additional exception beyond "all rights of action against any employer * * *." Wyo. Const. art. 10, § 4. Surely, both that knowledgeable governor as well as the legislature knew how to include any co-employee if that had been their direction or intent. Neither was Wyo. Const. art. 10, § 4 amended to provide for co-employee immunity when the last two sentences of the constitutional provision were added in 1986. It was not done with either amendment when added more than seventy years apart and we now address plastered-on authority for some further reductions in workers' rights by attribution without any supporting language found in any amendatory provision. Plain meaning cannot take us to what Justice Thomas and Justice Golden seek in a basic diminution of a constitutional right legislated without authorizing change in the constitution and

directed to provide a special interest benefit which surely does not favor the injured worker. *Allied–Signal, Inc. v. Wyoming State Bd. of Equalization,* 813 P.2d 214 (Wyo.1991).

Clearly, dissertation in this opinion has nothing to do with principles and objectives included in the philosophy of worker's compensation legislation, originally addressed in 1913 by Governor Carey and since frequently considered by legal scholars. Worker's compensation state agency personnel in a Cheyenne, Wyoming office have little conversance and no authority for supervision regarding a drilling rig or sawmill safety requirements. What we do have is another immunity effort to limit the injured person's right of recovery. I do not accept a *reductio ad absurdum* conjecture to justify denied justice to this specialized class of state citizens. If I should negligently injure my judicial assistant or law clerk while at work, they could sue; however, a pipefitter killed or badly injured by a fellow worker through a culpably negligent act is denied the same relief. The world did not come to an end during the period of time while the rights to recovery did exist under this state's laws and a resumption of that right does not seem to me to be an implacable burden on the justice delivery system in providing redress from wrongful conduct.

Legislation which arbitrarily abolishes an entire cause of action and eliminates all right to redress for injury violates the Wyoming Constitution. *Nehring,* 582 P.2d 67; *Markle v. Williamson,* 518 P.2d 621 (Wyo. 1974); *Pleasant v. Johnson,* 312 N.C. 710, 325 S.E.2d 244, 250 (1985). In my opinion, Wyo.Stat. § 27–14–104(a) is constitutionally unacceptable in these several definable ways. Consequently, I concur in the opinions of Chief Justice Macy and Justice Cardine. Without re-recitation of everything I have previously written in these cases, I specifically concur in the result to determine that this challenged statute impermissibly denies rights of an injured person contrary to rights guaranteed by the Wyoming Constitution. "Particularly to be guarded against by a self-governing people is any deficiency in knowing what in hu-

man beings and in citizens is truly to be cherished." George Anastaplo, *Amendments to the Constitution of the United States: A Commentary,* 23 Loyola U.Chi. L.J. 631, 848 (1992). Protection from physical injury at the work place is one such challenge.

THOMAS, Justice, dissenting, with whom GOLDEN, Justice, joins.

I dissent. In doing so, I am compelled to offer some jurisprudential criticism. In an instance such as this, if the result of the court's initial decision is to be changed, it ought to be because of some compelling rule that is clearly identifiable by precedents or other mandatory authorities. Constitutional issues are of such significant import that they should not be resolved by a plurality decision without a majority opinion. The court owes a duty to the bench, the bar, and the citizens of Wyoming to agree on a basis for decision and to justify that basis. In this instance, there is no opinion of the court. I am concerned that the requirements of our statute have not been satisfied.

> The opinion of the justices of the supreme court on any matter pending before it, shall be given in writing and filed with the papers in the case, and when the justices thereof are divided in opinion in any case, the fact of such division shall be stated in the opinion and the dissenting justice may file his opinion.

Wyo.Stat. § 5–2–110 (1977).

The statute seems to clearly contemplate that the court will arrive at a majority position, and that has not happened in this instance. In fact, there is yet a third opinion invoking provisions of the constitution that neither the opinion of the court nor Justice Cardine's concurring opinion will support.

This case stands as a classic object lesson demonstrating the awkwardness and futility of reasoning from a decision. My point is illustrated by the fact that now the members of the court who appeared to agree on a result cannot agree with respect to why they arrived at that result. In an instance

such as this, in which the case has been decided once; three members of the court have agreed upon not only the result but the rationale for that result; and the bench, bar, and the citizens of the state have been apprised of that result, it is incumbent upon the court to justify a switch in position by clear, cogent, and unequivocal reasons. Since all of these hallmarks are absent from the majority and concurring positions, I am compelled to adhere to the views articulated in the original opinion of the court. *Mills v. Reynolds,* 807 P.2d 383 (Wyo.1991). In addition, I join in the cogent and scholarly views articulated in the separate dissenting opinion of Justice Golden. I am satisfied that the authority upon which Justice Golden relies is equally effective to refute the positions of the concurring justices, which, in effect, take from the legislature its appropriate role in establishing substantive law.

It would be an imposition to reiterate the position of the court when this case was first decided. Instead, I commence my critique of the majority decisions by quoting some very perceptive language:

> Perhaps only a Cassandra will be heard to mourn the neglected rule of *stare decisis,* but it is a sad day indeed when our declarations within the same case are subject to judicial revision. If we are unwilling to take seriously what we write, how can we expect others to take us seriously?

*Jones v. State,* 798 P.2d 1206, 1208 (Wyo. 1990) (Cardine, J., dissenting).

The pitfalls that must be associated with the new decisions can only be captured by emphasizing the confusion they will leave with the bench, the bar, and the citizens in general. The absence of a clear rationale for the decisions must be deplored. A constitutional decision in which, at the most, only two justices can agree on any basis for the decision must be regarded as an institutional failure.

It is appropriate to consider first the conclusion in Justice Cardine's concurring opinion that the statute contravenes Article 10, Section 4 of the Constitution of the State of Wyoming. I begin by noting that, in his opinion, Justice Cardine initially is faithful to his perceptive view in *Jones,* quoted above. He does not join in the rationale suggested by the opinion of the court and criticizes that rationale because it departs from *Meyer v. Kendig,* 641 P.2d 1235 (Wyo.1982), with respect to the shift from "an ordinary interest" to "a fundamental right." Yet, when the holding of the court in *Meyer* with respect to Article 10, Section 4 of the Constitution of the State of Wyoming is addressed, *Meyer* is given no precedential effect in the concurring opinion. Surely this is a selective use of the doctrine of *stare decisis.*

It is simply cavalier to ignore this holding in *Meyer:*

> Appellee argues that the first sentence of Art. 10, § 4, Wyoming Constitution, prohibits the legislature from granting immunity to co-employees for negligence, regardless of degree. She acknowledges the propriety of immunity granted to employers because of the subsequent language in Art. 10, § 4 of the Wyoming Constitution. Such first sentence states that "no law shall be enacted limiting the *amount of damages* to be recovered * * *" (emphasis added). Section 27–12–103(a) [the predecessor of Wyo.Stat. § 27–14–104(a)] does not limit the amount of damages to be recovered. It limits the cause of action available for a recovery. The fact that the first sentence of Art. 10, § 4 relates only to the amount of damages is exemplified by the second sentence which pertains to the "right to recover." A "limitation in amount" and a "right to recover" were regarded as separate issues and treated separately by the framers of the Wyoming Constitution. See Journal and Debate of the Constitutional Convention of the State of Wyoming, pp. 443–454 and 614–616 (1889). The plain language of such first sentence and its ordinary meaning reflects its prohibition to be against laws limiting the "amount of damages." Section 27–12–103(a) does not do that. This fact is determinative of the constitutionality of such section insofar as Art. 10, § 4 of the Wyoming Constitution is concerned. Furthermore, if

the first sentence of Art. 10, § 4, were given the broad application urged by appellee, it would conflict with, and would make enactments impermissible on, such subjects as comparable negligence, statutes of limitation, contribution among joint tort-feasors, etc.

*Meyer*, 641 P.2d at 1239 (footnotes omitted).

Upon reflection, I am persuaded that neither in the prior opinion of the court, nor the initial dissent, nor any of the court's opinions upon rehearing, has the true nub of this controversy been identified and described. The fact of the matter is that these claims are nothing more than an effort to impose vicarious liability upon the employer, who clearly is relieved from tort liability by the constitution and the statutes, by structuring a claim against a co-employee who must be perceived as an additional insured under the employer's liability insurance policy. The effort, then, is to require that an employer respond to an injury at the jobsite not only by the maintenance of worker's compensation coverage for his injured employees, but by virtue of a liability policy. The employer, in fact, does pay twice. He pays by his contribution to the worker's compensation fund, and he pays by virtue of what will have to be additional premiums for his liability insurance. When this situation is recognized for what it is, it does seem that the product of the new decisions is antithetical to the intent of the worker's compensation statutes. I note that, in his earlier dissent, Justice Urbigkit conceded this proposition, as Justice Cardine now does in his concurring opinion.

If this is to be the product of the new decisions, I wonder if it doesn't signal a truly Pyrrhic victory for the injured workers. I assume that liability insurance carriers will have little difficulty in defining an additional insured under the employer's liability insurance policy so that it does not include an employee when the claim is made by a co-employee. Consequently, the deep pocket, which these claimants obviously want to dip into, will not be available. With respect to the right to sue co-employees, the majority adopts a rule that justifies every working man in surveying the work place and saying to himself, "Now, I can sue everyone here!" Some perceptive working person may pause and say also, "Wait a minute! Now, everyone here can sue me!" It is clear that this decision by the court creates the prospect of economic disaster for every worker in the State of Wyoming. Nothing in the law is going to require an employer to maintain a liability insurance policy that in effect duplicates the worker's compensation coverage. Nothing in the law is going to limit any recovery to the proceeds of the employer's liability insurance policy. The homeowner's insurance of every worker who owns a home; that worker's personal and real property; that worker's savings accounts and investments; and, perhaps, even that worker's retirement fund may all become available to respond to the claim for damages.

In light of this situation, the rationale articulated in Justice Cardine's concurring opinion with respect to the history of the Constitutional Convention is not persuasive of an intent to limit legislative authority to abolish remedies. The argument is nothing more than bootstrapping. There is nothing in the remarks of Mr. Reed reported in the *Journal and Debates of the Constitutional Convention of the State of Wyoming* (1889) that really suggests he was concerned at all with the proposition that the legislature could take away a remedy. Language that addresses matters of contract between an employer and an employee cannot be stretched to relate to limiting the authority of the legislature. The conclusion that Article 10, Section 4 forecloses that result by articulating a prohibition upon limiting damages is a classic *non sequitur*. The better wisdom is found in the language of Justice Potter in *Rasmussen v. Baker*, 7 Wyo. 117, 138, 50 P. 819, 824 (1897). Justice Potter, who had been a leading member of the same Constitutional Convention, wrote in that case:

> The debates of the convention are not a very reliable source of information upon the subject of the construction of any particular word or provision of the

constitution. As we understand the current of authority and the tendency of the courts, they may for some purpose, but in a limited degree, be consulted in determining the interpretation to be given some doubtful phrase or provision; but, as a rule, they are deemed an unsafe guide.

I am satisfied that the authority that Justice Golden recites for the proposition that the elimination of a remedy does not contravene Article 1, Section 8 of the Constitution of the State of Wyoming has substantially the same impact with respect to a claim that the abolition of a remedy is foreclosed by Article 10, Section 4. Invoking a current analogy, I fear that, if the thread of reasoning in the concurring opinion were a bungee jumping cord, the jumper surely would die because the cord is too frail and would be stretched too far.

In fact, it seems to me this is exactly what has occurred in connection with the opinion of the court as it now stands. Justice Golden very deftly has eviscerated the contention that Article 1, Section 8 has been contravened by this legislative scheme. There is no fundamental right to the maintenance of a particular remedy. The further concern that I have with the opinion of the court is that, to the extent that it depends upon a classification that distinguishes between employment and ultra-hazardous employment, a logical extension of that rationale is that the entire worker's compensation statutory scheme is unconstitutional. Justice Cardine is correct in his criticism that the classification of ultra-hazardous employment has continually been maintained as constitutional in Wyoming.

It is to be noted that the court's opinion is structured on an extremely narrow ground. The rationale is that the statute is unconstitutional because it violates equal protection guarantees embraced in our state constitution. That contention is premised upon the classification scheme in the statute that extends immunity to covered employees and also those who may be covered at the discretion of the employer. The strict scrutiny standard for evaluating classifications then is invoked because of the claimed fundamental right of an injured employee to access to the courts. Justice Golden has demonstrated the fallacy of this latter precept, and I note that the opinion of the court has taken language from the court's first opinion out of context to help explain this rationale. In the first opinion, that language was addressed to a contention that an unconstitutional classification existed because only those employees engaged in ultra-hazardous employments were granted immunity. That contention is maintained by the claimants in this rehearing, and it seems that the position of the court now is that the classification of those employees engaged in ultra-hazardous employment is constitutionally suspect and must be tested by the standard of strict scrutiny. If that is true, can anything remain of the worker's compensation statute? The truth of the matter is that the worker's compensation act does not create classifications that treat similarly situated people differently. All similarly situated people are treated alike, and the fact that different situations fall into different classifications, historically and analytically, does not demonstrate an unlawful classification. Neither does it support a conclusion that the rational basis test, the proper test to invoke, does not justify the statutory inhibitions.

It may be that the proposition will be reasserted that the statute justifies intentional harm, even homicide and, for that reason, cannot be supported. It is very difficult to visualize a situation in which an intentional tort, or a homicide, could be perceived as having occurred within the scope of employment. Of course, upon reflection, it is clear that these claimants do not want to maintain access to the courts by an allegation that the co-employees were not acting within the scope of their employment. The likelihood that such an allegation would remove the co-employees from the definition of an additional insured under the employer's liability insurance policy is so compelling that the claimants do not want to make that allegation. The product of that dynamic, however, is that the scope of employment matter really be-

comes moot so far as these claimants are concerned. They simply don't want to talk about it because it could inhibit the attempt to mulct the employer twice, once through the worker's compensation fund, and once through the liability insurance policy.

GOLDEN, Justice, dissenting, with whom THOMAS, J., joins.

I respectfully dissent. I continue to endorse this court's original opinion authored by Justice Thomas and join his penetrating and illuminating dissenting opinion today.

I write separately to express my concerns about the new majority's misunderstanding about the meaning of Wyo. Const. art. 1, § 8.

The new majority claims that Wyo.Stat. § 27–14–104(a) infringes upon the fundamental right of access to the courts because it grants immunity from tort actions to alleged tortfeasor employees who injure a co-employee while acting within the scope of their employment. The new majority makes this claim without having undertaken any appropriate analysis of the constitutional provision in question. Had the new majority used such an analysis, I believe it would have found that section 8 is not a limitation on lawmakers who, in the proper exercise of the legislative power, may alter or abolish common law causes of action as long as that legislative action does not violate some other provision of our constitution. As Justice Thomas' original opinion for the court demonstrates, § 27–14–104(a) does not violate any other state constitutional provision.

The starting point for interpreting section 8, as with any constitutional provision, is the original understanding of those who drafted it and the people who adopted it. *Rasmussen v. Baker*, 7 Wyo. 117, 128, 50 P. 819, 824–25 (1897). When the members of the state constitutional convention convened in Cheyenne in early September, 1889, they had copies of the proposed and soon-to-be-ratified constitutions of Idaho, North Dakota, South Dakota, Montana, and Washington.[1] The Wyoming Constitution's guarantee in section 8, "All courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay" closely resembles the corresponding guarantee in each of the constitutions of Idaho,[2] North Dakota,[3] South Dakota,[4] and Montana.[5] The chief notable textual differ-

1. *Idaho:*
   *Constitution ratified November 5, 1889. Idaho admitted to the Union, July 3, 1890; the constitution became effective the same day.*
   *Montana:*
   *Constitution ratified October 1, 1889. Montana admitted to the Union, November 8, 1889.*
   *North Dakota:*
   *Constitution ratified October 1, 1889. North Dakota admitted to the Union, November 2, 1889; the constitution became effective the same day.*
   *South Dakota:*
   *Constitution ratified October 1, 1889. South Dakota admitted to the Union, November 2, 1889; the constitution became effective the same day.*
   *Washington:*
   *Constitution ratified October 1, 1889. Washington admitted to the Union, November 11, 1889; the constitution became effective the same day.*
   See also T.A. Larson, *History of Wyoming* 246–47 (1965); Richard K. Prien, *The Background of the Wyoming Constitution* 49–50 (1956) (unpublished M.A. Thesis, University of Wyoming); Charles Kettleborough, Ph.D., *The State Constitutions* (B.F. Bowen & Company, Indianapolis 1918).

2. Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice.
   Idaho Const. art. 1, § 18.

3. All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay.
   N.D. Const. art. 1, § 22.

4. All courts shall be open, and every man for an injury done him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without denial or delay.
   S.D. Const. art. VI, § 20.

5. Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay.
   1889 Mont. Const. art. 3, § 6 (quoted in *Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 776 P.2d 488, 491 (1989)).

ence between Wyoming's section 8 and its counterparts in our sister states' constitutions is that the latter expressly mention affording a "remedy," but the former does not.

The Wyoming framers established Committee No. 1 to consider the preamble and the declaration of rights article of the state constitution, of which section 8 is a part.[6] George W. Baxter, a Laramie County lawyer, was chairman of that committee.[7] He was probably "the author of much of our declaration of rights."[8] Reports of the several standing committees, including committee No. 1, do not exist.[9] The reported floor debates of the framers contain no discussion about the meaning of section 8's language.[10] Our limited search for writings of Mr. George W. Baxter concerning his committee's work has not been productive.

It is commonly understood[11] that the language of section 8 and its sister state counterparts traces back to Magna Carta's chapter 40[12] and Lord Coke's *Second Institute*.[13] Historically, the Magna Carta expression, as expanded by Lord Coke's contribution, was no doubt designed to address the evil practice "of commensurating the type and speed of justice with the amount the litigant was willing to pay for the use of the royal courts * * *."[14] Our problem, however, is to determine what the lan-

guage meant to our framers who undoubtedly, I believe, borrowed it from our sister states' constitutions. As the language concerns courts and the administration of justice to every person whose person, property, or reputation has been injured, intuitively the language must have been intended as an address to the judicial branch. As we have no record of the framers' deliberations from which we might find an explanation of what the language meant to them, it is helpful to us, as it has been to others before us, to consider the interpretations given this language by other courts.

In this regard, we are most fortunate to have helpful guidance from the late Justice Blume of this court. In *Mull v. Wienbarg*, 66 Wyo. 410, 212 P.2d 380 (1949), he, too, explored the meaning of section 8 in the course of his opinion for a unanimous court which held that, absent legislative change, the common law rule, that a cause of action for personal injury and death did not survive the alleged tortfeasor's death, prevailed. Justice Blume reviewed case law from sister states Idaho, South Dakota, Montana, and several other states, all of which have constitutional provisions similar to our section 8. *Mull*, 66 Wyo. at 421–23, 212 P.2d at 383–84. Following his lead, we have consulted the case law from those four sister states above mentioned. In interpreting their constitutional provisions, the supreme courts of those states have

**6.** Journals and Debates of the Constitutional Convention of the State of Wyoming, at 18 (1889).

**7.** *Id.* at 22; H.J. Peterson, *The Constitutional Convention of Wyoming*, at 124 (Laramie: University of Wyoming Publications 1940).

**8.** Melville C. Brown, Constitution Making, Proceedings and Collections of the Wyoming State Historical Department, 1919–20, at 101.

**9.** *Billis v. State*, 800 P.2d 401, 413–14 (Wyo. 1990).

**10.** Journals and Debates, *supra* note 6.

**11.** *See, e.g., Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 776 P.2d 488 (1989); David Schuman, *Oregon's Remedy Guarantee: Article I, Section 10 of the Oregon Constitution*, 65 Or.*L.Rev.* 35, 37–39 (1986); Janice Sue Wang, *State Constitutional Remedy Provsisions and Article I, Section 10 of the Washington State Constitution: The*

*Possibility of Greater Judicial Protection of Established Tort Causes of Action and Remedies*, 64 *Wash.L.Rev.* 203, 205–07 (1989); Note, *Constitutional Guarantees of a Certain Remedy*, 64 Iowa L.Rev. 1202, 1203 (1964).

**12.** "To no one will we sell, to no one will we deny, or delay right or justice."

**13.** "And therefore every Subject of this Realm, for injury done to him in *bonis, terris, vel persona* [i.e., goods, lands, or person], by any other Subject * * * may take his remedy by the course of the law, and have justice and right for the injury done him, freely without sale, fully without any denial, and speedily without delay." *Meech*, 776 P.2d at 492 (quoting Sir Edward Coke, Second Institute 55–56 (4th ed. 1671)).

**14.** W.A. Heindl, Notes and Comments, *A Remedy for All Injuries?*, 25 Chi.–Kent *L.Rev.* 90, 95 (1947); *see also Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 776 P.2d 488, 492 (1989).

determined that the provision speaks to those who apply the law, telling them when and how they must do so; the provision, however, does not speak to lawmakers, except insofar as they attempt to interfere with the administration of justice. *See, e.g.,, Hawley v. Green,* 117 Idaho 498, 788 P.2d 1321 (1990); *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 791 P.2d 1285 (1990); *Jones v. State Bd. of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976); *Moon v. Bullock,* 65 Idaho 594, 151 P.2d 765 (1944); (overruled to a limited extent on other grounds, *Doggett v. Boiler Engineering & Supply Co.,* 93 Idaho 888, 477 P.2d 511, 513 (1970)); *Meech v. Hillhaven West, Inc.,* 238 Mont. 21, 776 P.2d 488 (1989); *Johnson v. State,* 238 Mont. 215, 776 P.2d 1221 (1989); *Reeves v. Ille Elec. Co.,* 170 Mont. 104, 551 P.2d 647 (1976); *Shea v. North–Butte Mining Co.,* 55 Mont. 522, 179 P. 499 (1919); *Andrews v. O'Hearn,* 387 N.W.2d 716 (N.D.1986); *Malin v. La Moure Co.,* 27 N.D. 140, 145 N.W. 582 (1914); *McMacken v. State,* 320 N.W.2d 131 (S.D.1982); *Simons v. Kidd,* 73 S.D. 41, 38 N.W.2d 883 (1949).

In explaining this point, the Montana Supreme Court stated:

> The history of the guarantee indicates that framers of state constitutions inserted remedy clauses to insure equal administration of justice. Clauses insuring equal administration of justice are aimed at the judiciary, not the legislature. Therefore, the history of our provision supports [the alleged tortfeasor's] argument that our remedy guarantee does not create a fundamental right to full legal redress. Such a reading of the remedy guarantee also accords with another rule recognized in *Shea [v. North–Butte Mining Co.,* 55 Mont. 522, 179 P. 499 (1919), which case the late Justice Blume of our court quoted favorably from in *Mull* ]: No one has a vested right to any rule of common law.

*Meech,* 776 P.2d at 493.

The supreme courts of all four states in the above and foregoing cases have held that section 8's counterparts place no restriction on the power of the legislature to alter or abolish common law causes of action. *Id.* These cases are bolstered by decisions from the highest courts of other states, the constitutions of which have provisions nearly identical to section 8. A notable example is found in Colorado, in which the Supreme Court upheld a statute establishing the immunity of co-employees for a fellow worker's injuries sustained when the employees are acting within the scope of their employment. The court held that the statute did not violate state constitutional provisions of right to access to courts, due process or equal protection. *Kandt v. Evans,* 645 P.2d 1300, 1306 (Colo. 1982).

The power of the Wyoming legislature to abolish substantive common law rights including those traced to the common law of England, in order to attain a permissible legislative object, has previously been decided by this court. *Schlattman v. Stone,* 511 P.2d 959, 960 (Wyo.1973). The common law of England was not adopted in the state of Wyoming by our constitution. The common law prevails here only by virtue of its adoption into the law of the state by legislative enactment. *State v. Foster,* 5 Wyo. 199, 38 P. 926, 927–28 (1895). Before statehood, one of the territorial laws, C.L. 1876, ch. 26, § 1, contained the same language that Wyo.Stat. § 8–1–101 contains today:

> The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law * * * are the rule of decision in this state when not inconsistent with the laws thereof, and are considered as of full force until repealed by legislative authority.

Wyo. Const. art. 21, § 3, provides that "[a]ll laws now in force in the Territory of Wyoming which are not repugnant to this constitution shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature."

Against this background, I find it most difficult to accept the strange notion that

the framers and ratifiers of our state constitution, many of whom were "lawyers and others quite familiar with the statute laws of the territory," [15] intended section 8 to operate so as to freeze in place, impervious to legislative action, all common law causes of action extant in 1889–90. And yet, that is the very strange notion embedded in this court's new majority opinion. That opinion is based solely on the notion that legislative action which alters or abolishes a common law right of action violates the injured citizen's section 8 right to access the courts. This court's new majority has cited no law in support of that notion. Bald assertion masquerades as both legal authority and reasoning. In *Mull v. Wienbarg*,[16] Justice Blume quoted with approval from *Shea v. North–Butte Mining Co.*[17] to make the point that section 8 means "no more nor less than that * * * the courts must be accessible to all persons alike * * * and afford a speedy remedy for every wrong *recognized by law as being remedial in court.*" (Emphasis added).

Justice Blume specifically noted that *Shea* addressed this issue:

> If the contention of [the injured party's] counsel should be upheld, the consequence would be that the Legislature would be stripped of all power to alter or repeal any portion of the common law relating to accidental injuries or the death of one person by the negligence of another.

*Mull*, 66 Wyo. at 423, 212 P.2d at 384 (quoting *Shea*, 179 P. at 503).

In *Shea* the court also stated:

> It is true the Legislature cannot destroy vested rights. Where an injury has already occurred for which the injured person has a right of action, the Legislature cannot deny him a remedy. But at this late day it cannot be controverted that the remedies recognized by the common law in this class of cases, together with all rights of action to arise in [sic] future may be altered or abolished to the extent of destroying actions for injuries or death arising from negligent accident, so long as there is no impairment of rights already accrued.

*Shea*, 179 P. at 503.

Thus, Justice Blume knew, as we all do, that the courts are to afford remedies not for every wrong but for every wrong recognized by law. Section 27–14–104(a), enacted by our state legislature in the proper exercise of its police power, does not recognize as a legal wrong compensable under tort law a co-employee's injury at the hands of a fellow employee acting within the scope of employment. The injury is compensable under the worker's compensation law. The injured employee has a legal remedy. That exercise of the legislative police power does not infringe on the injured employee's right of access to the courts. The appropriate question then is not whether the right to seek a remedy in the courts for a legally recognized cause of action is a fundamental right; rather, the appropriate question is whether the right to seek a tort remedy in the courts for this particular cause of action is a fundamental right. As demonstrated by the above and foregoing constitutional analysis, the answer is "no." That correct answer necessarily deprives this court's new majority of the strict scrutiny standard of review, a standard without which it cannot achieve the result desired.

---

**15.** *Mestas v. Diamond Coal & Coke Co.,* 12 Wyo. 414, 430–31, 76 P. 567, 570 (1904).

**16.** 66 Wyo. 410, 423, 212 P.2d 380, 384 (1949).

**17.** 55 Mont. 522, 179 P. 499, 502 (1919).