**WYOMING DEPARTMENT OF REVENUE AND TAXATION–EXCISE TAX DIVISION, Appellant (Defendant),**

**Andy E. Marshinsky, Vanetta M. Marshinsky, Andy Marshinsky, Jr., and Jill Marshinsky, Borg Warner Acceptance Corporation, Bay's Construction, Inc., Credit Bureau of Kemmerer, Bombardier Corporation, (Defendants),**

v.

**FIRST WYOMING BANK, N.A.—KEMMERER, Appellee (Plaintiff).**

No. 85–285.

Supreme Court of Wyoming.

April 24, 1986.

A.G. McClintock, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Robert J. Walters, Asst. Atty. Gen., for appellant.

John C. Patton and Sherrill A. Veal of Carmichael, McNiff & Patton, Cheyenne, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

BROWN, Justice.

This appeal involves the question of whether a tax lien filed on property to collect delinquent sales tax takes priority over an earlier recorded mortgage interest of record in the property. Appellee First Wyoming Bank, N.A.-Kemmerer (the bank) filed an amended complaint seeking judicial foreclosure requiring appellant Wyoming Department of Revenue and Taxation-Excise Tax Division (the state) to set up any claim they may have against the subject property, and seeking to declare the bank's mortgage superior to any interest held by the state. Both parties moved for summary judgment and stipulated to the facts. The trial court granted summary judgment in favor of the bank and the state appeals, raising the following issues:

"I

"Did the district court err in its holding as a matter of law that a sales tax lien does not relate back to the date that unpaid sales taxes became due?

"II

"Did the district court err in its holding that a sales tax lien becomes effective when recorded to resolve the relative priorities of competing liens?"

The bank states the issue as:

"Whether an unperfected lien for deficient sales taxes which is not a matter of public record should have priority over a third party creditor, who has a prior, properly perfected mortgage interest of record which intervenes between the time the sales tax liability may have accrued and the time when the state's interest is made a matter of public record."

We will affirm.

The property in question was owned by Andy and Vanetta Marshinsky. The property was used to operate a business known as "Andy's, Inc." in Kemmerer, Wyoming. Some of the activities of the business included the retail sale of automobiles, snow machines, related equipment accessories, as well as repair work done on the same.

Audits were conducted on the business by the state, and sales tax deficiencies were levied against the Marshinskys for the period August 1, 1976, to July 30, 1979 inclusive. The Marshinskys did pay sales tax during this period, but subsequent audits by the state revealed a deficiency.

On July 11, 1980, the state sent a deficiency assessment to the Marshinskys. This assessment was later revised, and other assessments were sent. When no response was rendered by the Marshinskys, the state filed a certificate of lien with the Lincoln County Clerk on June 5, 1981, covering all real and personal property owned by the Marshinskys.

The bank claims a debt owed to it by the Marshinskys arising from nonpayment of three notes secured by a mortgage recorded March 19, 1979. This mortgage covered real estate in connection with the business, and several other lots unrelated to the business. The question presented is which interest takes priority—the bank's mortgage recorded March 19, 1979, or the state's subsequent tax lien filed June 5, 1981.

We will consider both of the state's issues together. The state contends the district court erred in holding that the sales tax lien did not "relate back to the date that unpaid sales taxes became due," thus making the bank's prior perfected mortgage superior to the sales tax lien.

Our discussion begins with a recitation of the applicable statute, § 39–6–410, W.S. 1977 (May 1985 Replacement), which states in relevant part:

"(a) Any tax due under this article constitutes a debt to the state from the persons who are parties to the transaction and *is a lien from the date due on all the property of those persons*. The tax due together with interest, penalties and costs may be collected by appropriate judicial proceedings or the board may seize and sell at public auction so much of the persons' property as will pay all the tax, interest, penalties and costs. * * * (Emphasis added.)

"(b) The tax *imposed* by this article is a lien with preference over all creditors except for taxes and debts due the United States and liens of record which have been filed or recorded prior to the *imposition* of a tax lien upon the property of any vendor who discontinues or sells his business or stock of goods. The vendor shall file a return within thirty (30) days after discontinuing or selling his business. His successor in business shall withhold from the purchase price enough money to pay the taxes, penalties and interest due on the outstanding amount of all credit, installment and conditional sales upon which the tax has not been paid until the time the former owner produces a receipt from the board showing that all taxes have been paid or a certificate that no taxes are due. If the successor fails to withhold from the purchase price the amount due and the taxes, penalty and interest are unpaid the original vendor and successor vendor are liable for the payment of the unpaid taxes, penalties and interest." (Emphasis added.)

Other than the preference enunciated in subsection (b) above, the statute does not state whether sales tax liens shall have priority over previously recorded interests. Nor does the statute state how a sales tax lien is to be perfected.

Appellant contends the sales tax lien "is an automatic lien arising by operation of law on the date the corresponding sales tax became due." This is so, appellant contends, even though the tax deficiency is not discovered until later, and in spite of another encumbrance filed of record between the time the taxes became due and discovery of the deficiency. Appellant further contends that the sales tax lien has priority over the bank's mortgage because § 39–6–410(a)

states that "any tax due * * * is a lien from the date due * * *."

It is true that Section 39–6–410(a) provides that any tax due is a debt to the state and is a lien on all property from the date the tax is due; however, this subsection does not say that the lien is superior to an intervening lien properly recorded. The state bootstraps its theory of priority by reference to § 39–6–410(b), which arguably applies to circumstances where the business is sold or discontinued. Further ambiguity is manifest by the term "imposed" appearing in subsection (b). This term implies some affirmative action other than a tardy audit.

The trial court held that a sales tax lien becomes effective against prior lienholders when it is recorded or the state otherwise provides notice of its lien. In its order the court stated:

"8. The State's lien did not relate back to the first date that unpaid sales taxes became due, nor is its priority, as against third parties and other creditors relying on the public record, preserved by sending notices of deficiency to the taxpayer. The State's earliest priority date, as against bona fide purchasers and others relying on the public record, is June 5, 1981.

"9. The State's lien, perfected June 5, 1981, could not take priority over a prior, perfected mortgage interest in the taxpayer's property, properly recorded March 19, 1979."

We think the trial court reached the correct result. Once the bank perfected its interest in the land by recording the mortgage pursuant to § 34–2–109, W.S.1977, such gave notice that the bank held an interest in the property. Furthermore, a mortgage of property in this state is a "conveyance" pursuant to § 34–1–102, which is to be recorded under § 34–1–121. A recorded interest in land constitutes notice to others. Section 34–1–121 provides in part:

"(a) Each and every deed, mortgage, instrument or conveyance touching any interest in lands, made and recorded, according to the provisions of this chapter, shall be notice to and take precedence of any subsequent purchaser or purchasers from the time of the delivery of any instrument at the office of the register of deeds (county clerk), for record. * * *"

■ Sales tax liens are solely objects of statutory creation. *State Board of Equalization v. Courtesy Motors*, Wyo., 362 P.2d 134 (1961). As noted earlier, § 39–6–410 is ambiguous when applied to the facts here. Therefore, resort must be made to principles of statutory construction. When construing statutes, the intention of the lawmaking body must be ascertained from the language of the statute as nearly as possible. *McArtor v. State*, Wyo., 699 P.2d 288 (1985); *State v. Sodergren*, Wyo., 686 P.2d 521 (1984); *McGuire v. McGuire*, Wyo., 608 P.2d 1278 (1980). We must construe statutes in pari materia with other relevant statutes. *Citizens of Otto v. Wyoming State Committee for School District Organization*, Wyo., 705 P.2d 831 (1985); and *Matter of Shapiro*, Wyo., 703 P.2d 1079 (1985).

■ Subsection (b) of § 39–6–410 cited earlier, provides that a sales tax lien is subject to other liens "filed or recorded prior to the *imposition* of a tax lien upon the property of any vendor who discontinues or sells his business or stock of goods." (Emphasis added.) The word "imposition" implies that some affirmative act is required by the state to identify and perfect its lien. Such is in conformity with the definition of imposition, "the act of imposing." Websters New Collegiate Dictionary, p. 576 (1976). See also, 10A Thompson on Real Property § 5312 pp. 671–672 (1957). Until the state takes some affirmative action to determine the deficiency and identify the extent of its lien, no one is placed on notice that there is a deficiency which may result in a lien being placed on the property.

■ In this case, the first notice given the Marshinskys by the state that there was a sales tax deficiency occurred on July

11, 1980, over a year after the bank recorded its mortgage on the property on March 19, 1979. On June 5, 1981, some two years after the bank's mortgage had been recorded, the state filed its sales tax lien on the property.

Further light is shed on the problem when one looks at the procedure for filing other liens on property. A lien filed for delinquent real estate taxes is "subject to all prior existing valid liens" under § 39-3-102, W.S.1977 (May 1985 Replacement). A real estate tax lien is not made superior to prior existing perfected liens as the state proposes in this case regarding sales tax liens. Furthermore, Title 29, governing liens (§§ 29-1-101 through 29-7-301, W.S. 1977 (June 1981 Replacement)), provides that a lien must be filed with the county clerk in order to have a perfected lien. § 29-1-301.

In *State Board of Equalization v. Courtesy Motors, Inc.*, Wyo., 362 P.2d 134 (1961), we construed § 39-300, W.S.1957, the predecessor of § 39-6-410(b), as applied to the sale of a business. The state brought suit against the purchaser of a business claiming the purchaser was liable for a sales tax deficiency owed by the previous owner. The question was whether a sales tax lien had priority over a previously recorded chattel mortgage. This court said no. The case has limited applicability to the case at bar since the sales taxes in question did not become due until after the chattel mortgage was executed and filed.

Here, the sales taxes accrued between August 1, 1976 and July 30, 1979. However, as noted previously, the state did not file its lien for the deficient taxes until June 5, 1981. The state claims, however, that such lien is superior to a previously perfected mortgage even though no one had notice of such lien. This seems to be in derogation of the purpose of our recording statutes, which entitle one to rely on public records and determine whether or not a certain property is subject to liens, prior encumbrances or other outstanding claims.

Were we to agree with the position urged by the state, long established lending practices would of necessity have to be changed, and existing loans would be in jeopardy for an uncertain time. Lending institutions would never know if they had a sufficiently secured loan.

To endorse the state's claim that a sales tax lien has "super priority" over all other interests would be tantamount to sanctioning secret liens. Creditors and others who have an interest in property should be able to rely on public records to determine whether the property is subject to other competing interests. This enables a creditor to evaluate the risks of making a loan, and enables an interested purchaser to make an informed decision regarding the purchase of a property. If the state's argument prevailed, creditors, purchasers, and other interested parties could not make these evaluations because of the possibility of a secret tax lien not yet filed of record, but nevertheless taking priority over all other interests. In the absence of any authority, we cannot think the legislature intended such a result.

Having found no reversible error, the summary judgment granted by the district court is affirmed.

Affirmed.