### In re BRENT EXPLORATIONS, INC., Debtor.

### Bankruptcy No. 82 B 05215 J.

United States Bankruptcy Court, D. Colorado.

Sept. 14, 1988.

Jon B. Clarke, Englewood, Colo., for debtor in possession.

Edwin G. Perlmutter, Berenbaum and Weinshienk, Denver, Colo., for Unsecured Creditors Committee.

Dianna L. Orf, and Ted E. Orf, Orf & Orf, P.C., Denver, Colo., for Washakie County, Wyo.

### MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the Court upon (1) the Debtor's Motion for Determination of Tax Liability to Washakie County, to the State of Wyoming, and to the City and County of Denver; (2) a Motion for Relief from Stay and a Motion to Dismiss or Convert filed by Washakie County, Wyoming ("County").

Central to resolution of the issues herein is a determination of the claim of the County.

The Debtor filed its Chapter 11 bankruptcy petition on November 5, 1982. At the time of filing, the Debtor had drilled and

was operating six producing oil wells in Washakie County, Wyoming, and it held an interest in two additional producing oil wells in that county which it did not operate. At the time of filing, Debtor listed its interest in the wells at a value of approximately $2.7 million.

The parties stipulated to the following (see Applicant's Exhibit 1):

1. Debtor filed its petition in bankruptcy on November 5, 1982 under Chapter 11, Title 11, United States Code.

2. At the time of its bankruptcy petition, the principal amount of unpaid ad valorem property taxes due Washakie County, Wyoming from tax year 1981 was $216,187.14.

3. Pursuant to Debtor's amendment to its schedules filed with Washakie County, Wyoming which showed increased value of property, Debtor owes an additional $4,110.88 for tax year 1981.

4. At the time of its bankruptcy petition, the principal amount of unpaid ad valorem property taxes due Washakie County, Wyoming from tax year 1982 was $175,335.66.

5. At the present time, the principal amount of unpaid ad valorem property tax due Washakie County in tax year 1983 is at least $60,779.55 (Debtor's records) and may be as much as $65,957.85 (County's records).

6. The Royal Bank and Trust Company ("RBI") first recorded its mortgage against Debtor's property Washakie County, Wyoming on June 16, 1982, to secure the principal amount of $3.1 million.

7. The Debtor and the Unsecured Creditors Committee entered into a settlement with the Royal Bank and Trust Company pursuant to a Stipulation and Joint Motion filed with the Bankruptcy Court on December 2, 1987.

8. The Court entered its Order approving the Stipulation and settlement on December 8, 1987.

9. Pursuant to terms of the above-referenced Stipulation and Order, the Royal Bank and Trust Company was paid $65,000 from the bankruptcy estate.

10. Pursuant to terms of the above-referenced Stipulation and Order, the Royal Bank and Trust Company is to be paid the proceeds from sale of the Brent Federal well 20–1, which is the property of the bankruptcy estate, when the well is sold.

11. Gross value of production sold from the Washakie County property during the period 1982 through 1987 amounts to approximately $6,121,594 as reported by Debtor to the State of Wyoming and Washakie County.

## PRE–PETITION VERSUS POST–PETITION

■ The County asserts that taxes for "Tax year 1983" are post-petition administrative expenses under 11 U.S.C. § 503. The Debtor in Possession and the Creditors' Committee deny that assertion. The taxes involved are *ad valorem* taxes on personal property consisting of (1) the well-head equipment actually located at the well sites (pumps, etc.); and (2) the oil produced from the wells.

All property in Wyoming is subject to taxation, except as prohibited by the United States or Wyoming constitutions or expressly exempted by state statute. Wyo. Stat. § 39–1–102. (All future references to Wyoming Statutes will be by section number only). All taxable property is annually listed and assessed (valued) in the County in which it is located on February 1. § 39–2–101(a)(i). This would include the Debtor's equipment. If the property is acquired or brought into Wyoming after February 1, but before December 31, it is still subject to taxation for that calendar year, but there are provisions for prorating the tax. § 39–2–101(a)(ii). Thus, if the property is not in Wyoming at some time between February 1 and December 31, it is not subject to taxation. Thus, the incident of taxation for personal property such as the Debtor's equipment hinges on the possession of the property in the County at a specific point in time.

Once the equipment is assessed (valued), the various local taxing authorities then certify their respective mill levies to the

County. § 39–2–402. On or before the first Monday in August, the county assessor computes the taxes by multiplying the assessed values by the appropriate mill levies (§ 39–2–403) and delivers the tax list and his warrant for the collection of the taxes to the county treasurer who proceeds to collect the taxes.

Fifty percent of the taxes are due by September 1 and payable on November 10, and the remaining fifty percent are due on March 1 and payable on May 10 of the succeeding calendar year. If 100% of the taxes are paid before December 31 of the year of assessment, no interest or penalty is charged. § 39–3–101(a).

In this case, the taxes on the equipment for "Tax year 1983" are due on that equipment which was located in the county on February 1, 1983—the date of the assessment or valuation. Because the estate for the Debtor in Possession was the owner of the equipment on that date (the petition having been filed on November 5, 1982) these taxes were obviously incurred post-petition. The Debtor in Possession apparently agreed because as shown on Applicant's Exhibit 4, these taxes in the sum of $2,918.53 have been paid.

The taxes on the oil produced for "Tax year 1983" present a different issue. As shown on applicant's Exhibit 4, these taxes are $131,915.70 plus an adjustment of $5,225.57, for a total of $137,141.27. It should be noted that the equipment is assessed (or valued) by the county under § 39–2–101, *et seq.*, while the oil production is assessed by the state board of equalization which then certifies the value to the county assessor to be entered on the county assessment rolls under § 39–2–201, *et seq.*, on or before June 1. This assessment, or valuation, by the state board is based on the actual amount of the oil produced *"for the preceding calendar year"*. § 39–2–202. Thus, the "Tax year 1983" oil production taxes are based on the oil production in 1982 and the incident of taxation or liability is the production of the oil in 1982.

11 U.S.C. § 503(b)(1)(B)(i) provides that there shall be allowed administrative expenses for

(B) any tax—
    (i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title;

.     .     .     .     .

Thus, the first issue under § 503(b)(1)(B)(i) is whether the oil production taxes for the "Tax year 1983" were "incurred" by the estate. Clearly, they were not. They were incurred by the Debtor pre-petition because it was the Debtor who produced the oil from the property up to November 5, 1982. The estate and the Debtor in Possession had absolutely nothing to do with that production and sale of oil prior to November 5, 1982.

Section 39–3–102(a) provides as follows: Taxes upon real property are a perpetual lien thereon against all persons excluding the United States and the state of Wyoming. Taxes upon personal property are a lien upon all real property owned by the person against whom the tax was assessed subject to all prior existing valid liens. Taxes upon personal property are a lien upon the personal property until paid but if the personal property is transferred before payment, the tax shall be collected from other real or personal property of the transferor but if the transferor has no other property from which the taxes can be collected then payment shall be enforced from the transferred property.

Under the statute, against whom were these taxes assessed? It must be against the producer of the oil because that statute further anticipates that the producer will transfer the oil and provides that the property of the "transferor" shall be liable for the tax. Thus, in this case, the Debtor is the person against whom the tax was assessed and is the "transferor" of the oil, not the estate or the Debtor in Possession. The fact that the "assessment" occurred post-petition is of no consequence. Thus, the County has failed to show that it is entitled to a § 503(b)(1)(B)(i) administrative expense claim for the "Tax year 1983"

taxes on oil produced prior to November 5, 1982.

Because there is no accounting to show actual oil production and sales on a daily or monthly basis during 1982, the Court concludes that the proper method of determining the pre- and post-petition oil production taxes is to pro-rate the total taxes in proportion to the total number of days in calendar year 1982 that were pre- or post-petition. The pre-petition period for which the County is *not* entitled to an administrative claim was 308 days. Thus, the County's claim for administrative expenses of $137,141.27 is reduced by $115,724.69.

That leaves $21,416.58 of the "Tax year 1983" oil production taxes being "incurred" by the estate. Before a § 503(b)(1)(B)(i) claim can be allowed, it must be "incurred" by the estate, *and not* be a tax of a kind specified in § 507(a)(7). Because these are property taxes that were assessed *after* commencement of the case and are last payable without penalty *after* the date of the filing of the petition, they are not of the § 507(a)(7)(B) variety, nor are they the kind of taxes otherwise described in § 507(a)(7). Therefore, the County is entitled to a § 503(b)(1)(B)(i) administrative claim in the sum of $21,416.58.

The parties have also argued the applicability of 11 U.S.C. § 502(i). In the context of this case, however, the Court concludes that § 502(i) is superfluous. That section states:

(i) A claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(7) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claims had arisen before the date of the filing of the petition.

As was stated in L. King, 3 *Collier on Bankruptcy*, ¶ 503.04[b], at 503–35 (15th Ed.1987).

[T]he interaction between section 507(a)(7), section 502(i) and section 503(b)(1)(B), which specifically excludes from its application taxes entitled to priority under section 507(a)(7), is confus-

ing. To determine whether taxes are entitled to administrative expense status requires not only a finding that the taxes were incurred by the estate postpetition, but also a finding that the taxes do not fit within any of the categories specified in section 507(a)(7). Thus, the reference in section 503(a)(1)(B)(i) [this should read 503(b)(1)(B)(i) ] to section 507(a)(7) means that to the extent a debtor's prepetition liability becomes a tax claim after the petition, it is not for that reason alone to be given administrative expense status. Congress did not mean, however, to deny administrative expense status to a tax claim incurred by the Trustee as the result of his operation of the business.

Further, Collier states at ¶ 502.09, at 502–102 n. 1:

". . . all section 502(i) really does is make plain that a tax claim entitled to priority under section 507(a)(7), even though it arises after commencement of the case and, therefore, might logically be entitled to administrative status under section 503(b) and, therefore, a first priority under section 507(a)(1), is allowed, to the extent allowable "as if such claim had arisen before the date of filing of the petition." The allocation of such status as a pre-petition claim denies administrative status.

Simply determining in this case when the taxes were incurred accomplishes the same result that would obtain if the tangled web created by § 502(i) was mastered.

## LIEN STATUS

■ The County asserts that all of its taxes are secured by a lien on the real property interests of the estate in the subject wells and on the equipment by virtue of § 39–3–102(a), *supra*. The evidence is uncontroverted that the County did not, and has not filed any type of a notice of its lien. This Court considers the case of *Wyoming Department of Revenue v. First Wyoming Bank, N.A.*, 718 P.2d 31 (Wyo. 1986), to be controlling on this issue even though the tax involved there was a sales tax. The principles announced there apply equally here, i.e. to have a *perfected* lien

the county must file some notice or take some affirmative action so that creditors, purchasers, and other interested parties are able to determine whether the property is subject to the County's competing interests. The County did not file a notice of its lien in the public real property records and did not distrain the personal property or attempt to sell either, which it could have done under §§ 39–3–102 and 103. And, once the petition was filed on November 5, 1982, it could not take such action because of 11 U.S.C. § 362.

Under 11 U.S.C. § 545(2) the trustee (or in this case the Debtor-in-Possession) can avoid the statutory lien of the County because under the *First Wyoming Bank* case, *supra,* the County's lien is not perfected and its claim is unsecured.

## PRIORITY

To determine if the County is entitled to a § 507(a)(7)(B) priority, the taxes for each "tax year" must be examined in light of the wording in that statute. As stated, *supra,* the "Tax year 1983" taxes for the equipment and $21,416.58 of the oil production taxes are properly administrative expense claims. Also, the balance $115,724.69 of the "Tax year 1983" taxes on oil production do not qualify under § 507(a)(7)(B) because they were assessed *after* the commencement of the case.

Next, we examine the "Tax year 1982" taxes on the wellhead equipment. They were assessed February 1, 1982, and were last payable without penalty on December 31, 1982 (§ 39–3–101(a)). One year prior to the date of the filing of the petition was November 5, 1981. Because December 31, 1982, is after that date, these taxes do qualify for a § 507(a)(7)(B) priority. According to Applicant's Exhibit 4, the amount of those taxes is $7,716.31 and they have been paid. The same analysis would show that the oil production taxes for "Tax year 1982" survive the tests of § 507(a)(7)(B), and would be entitled to priority. The amount of these taxes is $175,335.66.

Finally, the "Tax year 1981" taxes on both the equipment and oil production were assessed February 1, 1981, and were last payable without penalty on December 31, 1981. This is also after November 5, 1981. Thus, these taxes are entitled to § 507(a)(7)(B) priority. Applicant's Exhibit 4 shows that oil production taxes were $216,187.14 and equipment taxes were $6,905.15. Again, the equipment taxes have been paid.

(At this point the Court cannot understand why the parties even mentioned the taxes on the equipment. There apparently has been no dispute over these taxes because they have been paid in full. Therefore, to avoid further confusion, the balance of this opinion will deal solely with the oil production taxes.)

The Debtor in Possession and the Creditor's Committee both argue that under 11 U.S.C. § 502(b)(3), the County's tax claim must be disallowed because the claim exceeds the value of the interest of the estate in the property. However, a careful reading of that section reveals that it does not apply. That section says that the court shall allow a claim filed under § 501 except to the extent that— ...

> (3) if such claim is for a tax assessed against property of the estate, such claim exceeds the value of the interest of the estate in such property.

This tax was *not assessed against property of the estate.* It was assessed against the prepetition oil of the Debtor which was produced in 1980, 1981, and 1982, all of which was sold by the Debtor prepetition, and none of which became property of the estate. It is true that the County claimed a lien on property of the estate for these taxes, but this lien was asserted on the real property interests in the wells and the equipment which was not the property against which the tax was assessed.

To summarize, then the principal tax liability of the estate to the county is as follows:

| "Tax Year" | § 507(a)(7)(B) | § 507(a)(1) | General Unsecured |
|---|---|---|---|
| 1981 | | | |
| Production | $216,187.14 | | |
| Equipment | 6,905.15* | | |

| "Tax Year" | § 507(a)(7)(B) | § 507(a)(1) | General Unsecured |
|---|---|---|---|
| 1982 | | | |
| Production Equipment | $175,335.66 7,716.31* | | |
| 1983 | | | |
| Production Equipment | | $21,416.58 2,918.53* | $115,724.69 |
| TOTAL | $406,144.26 | $24,335.11 | $115,724.69 |

* These amounts have been paid. In addition, the estate paid $42,598.23 on June 11, 1984, and $28,537.92 on September 25, 1984. See Respondent's Exhibit 4A and Applicant's Exhibit 4.

■ Post-petition interest is allowed on the post-petition (§ 507(a)(1)) priority taxes. However, no interest, pre-petition or post-petition is allowed on the pre-petition (§ 507(a)(7)(B)) taxes. *In re Reich*, 66 B.R. 554 (Bankr.Colo.1986). Nor is interest allowed on the pre-petition general unsecured taxes. Because the parties have not presented the Court with the appropriate calculations of interest, in light of the findings and conclusions, *supra,* and in light of the timing of Debtor's payments, they are hereby directed to make such calculations and submit them to the Court.

## MOTION FOR RELIEF FROM STAY

Because the County has no valid perfected security interest in the Debtor's property, it is not entitled to relief from the automatic stay to foreclose on said property.

## MOTION TO DISMISS OR CONVERT

The County alleges that there is (1) a continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; (2) an inability to effectuate a plan; and (3) unreasonable delay that is prejudicial to the creditors.

■ The evidence showed that the Debtor is running with a positive cash flow and has drastically reduced its expenses. All of its post-petition obligations are current. The Court cannot find that there is a continuing loss to or diminution of the estate.

■ Inability to effectuate a plan refers to a situation where a plan has been confirmed and the Debtor cannot fulfill its obligations thereunder. There is, as of now, no confirmed plan in this case.

■ Although this case is approximately six years old, there has been much litigation, negotiations, and settlements by the Debtor. Such matters take time. Under *all* the circumstances of the case, the Court cannot find that there has been "unreasonable" delay by the Debtor. It is, therefore,

ORDERED that the parties shall submit a calculation of the appropriate interest due the County in accordance with the findings and conclusions set forth herein within twenty (20) days.

FURTHER ORDERED that the Motion for Relief from Stay and the Motion to Dismiss or Convert are denied.

FURTHER ORDERED that the Court will, by separate orders, determine the tax liability of the Debtor to the State of Wyoming and to the City and County of Denver, Colorado.