Robert E. WILSON, Appellant
(Petitioner),

v.

STATE of Wyoming ex rel. OFFICE
OF HEARING EXAMINER,
Appellee (Respondent).

No. 91–277.

Supreme Court of Wyoming.

Nov. 9, 1992.

Bert T. Ahlstrom, Jr., Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Michael L. Hubbard, Sr. Asst. Atty. Gen., and Lillian Nicholas Sharpe, Asst. Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

MACY, Chief Justice.

The appellant, Robert E. Wilson, asks us to review the district court's order in which it affirmed the hearing examiner's decision to deny the appellant's request for probationary privileges to drive commercial motor vehicles while his private driver's license was suspended.

We affirm.

The appellant presents the following issues:

I. Whether the provisions of W.S. 1977, as amended, Section 31–17–105, prohibit the issuance of limited driving privileges to holders of commercial driver[']s licenses.

II. Whether the provisions of W.S. 1977, as amended, Section 31–17–105, pertain to on-duty violations, only.

III. Whether the provisions of W.S. 1977, as amended, Section 31–7–105, clarifies and/or modifies and/or controls Section 31–17–105.

IV. Whether W.S. 1977, as amended, Section 31–17–105, is unconstitutional when applied as it was in this case.

The appellee, State of Wyoming ex rel. Office of Hearing Examiner, phrases the issues as follows:

I. When a commercial vehicle operator receives a 90–day driver's license suspension for driving under the influence in a private vehicle, can the operator obtain limited driving privileges to operate a commercial vehicle during the suspension period?

II. Do W.S. 31–17–105(b) and 31–7–105(d) violate the equal protection guarantees of the United States Constitution or the Wyoming Constitution?

The appellant was a commercial truck driver. On March 11, 1991, he was driving his personal noncommercial motor vehicle on the South Greeley Highway when he was arrested for driving while under the influence in violation of Wyo.Stat. § 31–5–233 (1989). He pleaded guilty, and his driver's license was suspended. *See* Wyo. Stat. § 31–6–102 (1989). After receiving notice of the ninety-day suspension, the appellant requested a hearing.

A hearing was held on April 29, 1991, before the Independent Hearing Examiner of the State of Wyoming. The hearing examiner upheld the suspension but found that it would create an undue hardship on the appellant, so he modified the suspension by issuing a probationary driver's license. The probationary driver's license was valid only for medical emergencies, doctor appointments, errands during a specified time each week, and driving to and from work. The hearing examiner specifically noted that the probationary driver's license was not valid for commercial motor vehicle operation. Therefore, although the appellant could drive his personal car to and from work under the probationary driver's license, he could not perform his work because he could not operate commercial motor vehicles during the suspension of his driver's license.

The appellant petitioned the district court for a review of the hearing examiner's decision. The district court granted the petition for review and entered a stay of the suspension until all appellate review had

* Chief Justice at time of oral argument

been completed. The district court upheld the hearing examiner's ruling. The appellant lodged his appeal with this Court.

### Limited Driving Privileges Under a Commercial Driver's License [1]

The appellant argues that, because his arrest for DWUI took place while he was in his private vehicle and not while he was operating a commercial motor vehicle, the hearing examiner should have granted him limited privileges to operate a commercial motor vehicle during the suspension of his private driver's license. At the hearing, the hearing examiner commented:

> We have a slight problem, Mr. Wilson, in that under Wyoming law, my office can issue what is called a probationary driver's license and under normal circumstances, we can issue you a license to drive to and from and at work. However, since the Commercial Driver's License Act went into effect in January of '90, there's a provision in there that says you cannot operate any commercial motor vehicle while your license is suspended. What that means is we can go ahead and give you the probationary license, but it's not going to be valid for commercial operation.... [T]he only thing I can tell you is we can go ahead and enter the order, grant you the privileges, and we can get you to and from work. But it's not going to be any good to drive over the road.

The hearing examiner concluded that the Uniform Commercial Driver License Act, Wyo. Stat. §§ 31–17–101 to –120 (1989 & Supp.1992), limited the discretion otherwise provided to the hearing examiner under Wyo. Stat. § 31–7–105 (Supp.1990) [2] of the Driver's License Act, Wyo. Stat. §§ 31–7–101 to –140 (1989 & Supp.1992), and, therefore, he could not issue a probationary driver's license which would allow the appellant to operate commercial motor vehicles. When the district court reviewed the matter, it resolved the conflict between

§ 31–7–105 and the Uniform Commercial Driver License Act in favor of the Uniform Commercial Driver License Act because of its purpose. The district court found:

> Commercial motor vehicles do pose a higher degree of risk to the public and in an effort to deal with this higher risk, the legislature apparently found that the prohibition against driving a commercial motor vehicle while one's license was under suspension was needed. The court agrees with the State that higher standards for commercial motor vehicle operation serve a legitimate state interest in the regulation of such vehicles in order to promote public safety.

█ In general, we review agency actions and the district court's review of those actions under the standard set forth in the Wyoming Administrative Procedure Act. Wyo. Stat. § 16–3–114(c) (1990), provides in relevant part:

> The reviewing court shall:
>
> . . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law[.]

The standard of review used when this Court reviews an agency's conclusion of law is straightforward. "If the conclusion of law is in accordance with law, it is affirmed; if it is not, it is to be corrected." *Employment Security Commission of Wyoming v. Western Gas Processors, Ltd.*, 786 P.2d 866, 871 (Wyo.1990) (citing *Department of Revenue and Taxation of State of Wyoming v. Casper Legion Baseball Club, Inc.*, 767 P.2d 608 (Wyo.1989), and *Rocky Mountain Oil & Gas Association v. State Board of Equalization*, 749 P.2d 221 (Wyo.1987)).

In order to determine whether the hearing examiner, and in turn the district court,

---

1. Since this appeal concerns two different types of licenses, we will refer to them respectively as a private driver's license and a commercial driver's license for purposes of this opinion.

2. Amended by 1991 Wyo. Sess. Laws ch. 241, § 3 effective April 1, 1991, and by 1992 Wyo. Sess. Laws ch. 30, §§ 2 & 3 effective July 1, 1992, and ch. 69, § 1 effective September 1, 1992.

reached the correct conclusion of law, we must construe § 31–17–105 of the Uniform Commercial Driver License Act against § 31–7–105 of the Driver's License Act.

The Driver's License Act allows for an appeal once a driver has his or her private driver's license suspended. Section 31–7–105(d). After hearing the evidence, the hearing examiner was statutorily provided with several options. The relevant provision of the Driver's License Act in effect at the time of the appellant's suspension provided:

> Upon hearing, the hearing examiner shall either rescind or uphold the denial or order of suspension, revocation or cancellation or disqualification from driving a commercial motor vehicle or, good cause appearing therefor, may continue or modify a suspension of the license. The discretion to continue or modify any order of suspension so as to allow driving privileges is limited as follows:
>
> (i) It shall be extended only in cases where failure to do so would cause an undue hardship;
>
> (ii) It shall be extended only once to any person in a five (5) year period;
>
> (iii) It may be extended to a person convicted under W.S. 31–5–233 or other law prohibiting driving while under the influence only if:
>
> (A) Within the five (5) year period preceding the date of the most recent offense, the person has not been convicted under W.S. 31–5–233 or other law prohibiting driving while under the influence; and
>
> (B) The person agrees to pursue and completes an alcohol education or treatment program as the division prescribed.
>
> (iv) It shall not be granted in cases of:
>
> . . . .

**3.** The federal act is similar. Section 2703 provides:

> Effective July 1, 1987, no employer shall knowingly allow, permit, or authorize an employee to operate a commercial motor vehicle in the United States during any period—

> (F) A disqualification from driving a commercial motor vehicle under W.S. 31–17–111 and 31–17–113.

Section 31–7–105(d). The hearing examiner encountered a conflict between this provision and the Uniform Commercial Driver License Act.

Wyoming adopted the Uniform Commercial Driver License Act in 1989. 1989 Wyo. Sess. Laws ch. 176, § 1. Section 31–17–105 of the Uniform Commercial Driver License Act provides:

> (a) Except as provided by W.S. 31–17–106 or when driving under a commercial driver instruction permit, no person may drive a commercial motor vehicle unless the person has been issued and is in immediate possession of a commercial driver license and applicable endorsements valid for the vehicle they are driving.
>
> (b) No person may drive a commercial motor vehicle while:
>
> (i) His driving privilege is suspended, revoked or canceled;
>
> (ii) Subject to a disqualification; or
>
> (iii) Subject to an out-of-service order.

■ The appellant contends that he should have been granted probationary privileges to drive commercial motor vehicles since the suspension concerned only his private driver's license. We disagree. Under the Uniform Commercial Driver License Act and the corresponding federal legislation, the appellant was required to notify his employer of the suspension even though it occurred while he was operating his personal vehicle. Section 31–17–103(a) & (b). *See also* 49 U.S.C. app. § 2702(b) (1988). Once this notification occurred, the employer could not allow the appellant to operate a commercial motor vehicle during the time of the suspension.[3] Section 31–17–104; 49 U.S.C. app. § 2703 (1988). Section 31–17–104 provides:

> (1) in which such employee has a driver's license suspended, revoked, or cancelled by a State, has lost the right to operate a commercial motor vehicle in a State, or has been disqualified from operating a commercial motor vehicle. . . .

(a) Each employer must require the applicant to provide the information required in W.S. 31–17–103.

(b) No employer may knowingly allow, permit or authorize a driver to drive a commercial motor vehicle during any period in which the driver has:

(i) Not been licensed to drive a commercial vehicle;

(ii) A driver license suspended, revoked or cancelled by a state;

(iii) Lost the privilege to drive a commercial motor vehicle in a state;

(iv) Been disqualified from driving a commercial motor vehicle; or

(v) More than one (1) driver license.

Section 31–17–104 makes it clear that the Legislature did not intend for commercial drivers to operate commercial motor vehicles while their private driver's licenses are suspended. That section fits into the overall scheme of the Uniform Commercial Driver License Act by closely regulating commercial motor vehicles because of the unique danger they pose to the public.

The public safety purpose of the Uniform Commercial Driver License Act is made clear in the session laws, which state:

(a) The purpose of this act is to implement the Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. §§ 2701 through 2716 and to *reduce or prevent commercial motor vehicle accidents, fatalities and injuries* by:

(i) Permitting commercial drivers to hold only one (1) license;

(ii) Disqualifying commercial drivers who have committed certain serious traffic violations or other specified offenses;

(iii) Strengthening license and test standards.

(b) This act is a remedial law and shall be liberally construed to promote the public health, safety and welfare. *To the extent that this act conflicts with general driver licensing provisions contained in W.S. 31–7–101 through 31–7–202, this act prevails.* The general driver licensing provisions contained in W.S. 31–7–101 through 31–7–202 apply to persons licensed under this act to the extent

there are no conflicting provisions in this act.

1989 Wyo. Sess. Laws ch. 176, § 4 (emphasis added).

 Statutes in *pari materia* are to be construed together. *Halliburton Company v. McAdams, Roux and Associates, Inc.*, 773 P.2d 153, 155 (Wyo.1989) (citing *Wyoming Department of Revenue and Taxation–Excise Tax Division v. First Wyoming Bank, N.A.–Kemmerer*, 718 P.2d 31 (Wyo.1986)). A reading of the purpose statement of the Uniform Commercial Driver License Act in conjunction with §§ 31–7–105 and 31–17–105 leads to the inescapable conclusion that the Legislature intended that the hearing examiner's discretion to modify suspensions be limited and removed in the case of commercial motor vehicle drivers. The purpose statement requires that the Uniform Commercial Driver License Act be construed to prevail over the general Driver's License Act. Therefore, we conclude that the Uniform Commercial Driver License Act limits the hearing examiner's discretion to issue probationary driver's licenses during suspensions in that probationary driving privileges cannot extend to the operation of commercial motor vehicles.

We must examine whether this legislative intent violates the equal protection guarantees of our state and federal constitutions.

Equal Protection

The appellant argues that the hearing examiner construed the statutory schemes in a fashion which violated the equal protection guarantees of both the Wyoming and the United States Constitutions. In essence, his argument is that, if a person whose job involved driving a noncommercial motor vehicle had a driver's license suspension, the hearing examiner could statutorily allow limited driving privileges so that the person could remain employed during the suspension. He argues that, because he cannot be given limited driving privileges to drive a commercial motor vehicle, he is deprived of the same protection

against employment loss which others who hold only private driver's licenses receive.

■ Although in the past we have held that Wyoming's equal protection guarantee is identical to the federal protection, we recently reexamined the equal protection provision of the Wyoming Constitution and found that the Wyoming guarantee is broader than the federal protection. *Johnson v. State*, 838 P.2d 158, 165 (Wyo.1992). In *Johnson*, the court considered a new test[4] for analyzing state constitution equal protection claims. The test requires that four questions be analyzed:

First, what class is harmed by the legislation and has that group been subjected to a "tradition of disfavor" by our laws? ... Second, what is the public purpose that is being served by the law? Third, what is the characteristic of the disadvantaged class that justifies the disparate treatment? And lastly, how are the characteristics used to distinguish people for such disparate treatment relevant to the purpose that the challenged laws purportedly intend to serve?

*Id.*, at 166.

■ We first analyze whether the legislation harms the "class" of commercial driver's license holders and whether that class has been subjected to a "tradition of disfavor." The appellant argues that he was unduly hampered in his employment. If he had held only a private driver's license, the hearing examiner could have granted him a probationary driver's license so that he could have continued his employment. Since he held a commercial driver's license and was not granted a probationary driver's license because of § 31–17–105, the appellant argues that he was deprived of the same opportunity to pursue employment during the suspension that a private driver would receive merely because his employment happens to involve driving commercial motor vehicles. Therefore, the harm faced by the appellant was the adverse economic impact of not being able to pursue his employment during the suspension period.

While the legislation subjected the appellant to harm, the class or group the legislation regulates is not a group which has been subjected to a "tradition of disfavor" by our laws. Commercial drivers are heavily regulated at both the state and federal levels not because of assumptions about the characteristics of members in the group but, rather, because of the dangerous nature of the work they perform. Courts faced with equal protection challenges to various driver's license schemes have reached similar conclusions. *See, e.g., Commonwealth Department of Transportation, Bureau of Traffic Safety v. Huff*, 10 Pa.Cmwlth. 261, 310 A.2d 435, 436 (1973) (holding that a point system for only commercial drivers did not violate equal protection rights because of the unique danger). The legislative concern with safety will remain and be legitimate regardless of the makeup or characteristics of individuals in the regulated group. The need to regulate the operation of commercial motor vehicles is not the product of stereotypical thinking about a disadvantaged group of people but instead is a concern with regulating a dangerous industry. This line of reasoning flows into the second prong of the equal protection analysis, which is: "[W]hat is the public purpose that is being served by the law?" *Johnson*, at 166.

The purpose is to protect the public from potentially dangerous commercial motor vehicles. This particularized purpose is very persuasive and carries a great deal of weight when compared with potential harm to individuals who have been convicted of a dangerous offense relating to motor vehicles. This public purpose also helps us to identify the characteristic of the disadvantaged class which justifies the disparate treatment—commercial driver's license holders drive large and dangerous commercial motor vehicles.

---

4. The new test in *Johnson* does not affect the result reached in *Mills v. Reynolds*, 837 P.2d 48 (Wyo.1992). In fact, if *Mills* had been decided using the *Johnson* analysis, the result would have been the same. Thus, *Johnson* simply changes the way we analyze equal protection issues. *See, e.g., Mills*, 837 P.2d at 52–53.

In the final analysis, the characteristics which are used to distinguish commercial drivers for disparate treatment are highly relevant to the purpose which the challenged provision (§ 31–17–105 of the Uniform Commercial Driver License Act) intends to serve. As specifically noted in the purpose statement of the Uniform Commercial Driver License Act, the Legislature intended to promote the safe operation of commercial motor vehicles on public highways. 1989 Wyo. Sess. Laws, ch. 176, § 4. Not permitting those who have received a DWUI conviction while operating their private vehicles to receive probationary commercial driver's licenses is relevant to the purpose of preventing impaired persons from operating commercial motor vehicles. The characteristic of being a commercial driver's license holder is relevant to the purpose of preventing unsafe operation of commercial motor vehicles. By not allowing those who have suspended private driver's licenses to drive commercial motor vehicles during the suspension, the Legislature made the logically relevant determination that those who may have a problem operating private vehicles within the law may also have a similar problem operating commercial motor vehicles within the safe limits of the law.

The Legislature made a policy choice by deciding that it was better to ensure public safety during the suspension period and not allow commercial employment during that period rather than allow commercial operation during the suspension and force risk upon the public. Because of the great risk involved, the Legislature's judgment that individual commercial drivers should bear the loss rather than the entire public when such dangerous vehicles are involved passes constitutional muster. The statute survives this Court's equal protection analysis and is constitutional under both the Wyoming and United States Constitutions.

The hearing examiner did not err in deciding that he could not issue a probationary driver's license for commercial operation to the appellant because of § 31–17–105. The appellant's equal protection argument fails because the characteristics regulated by the statutory scheme were relevant to the purpose behind the Uniform Commercial Driver License Act.

Affirmed.

URBIGKIT, J., filed a dissenting opinion.

URBIGKIT, Justice, dissenting.

I dissent. The issue presented is whether the legislature intended to deny rights to a commercial driver which are available for other motorists.[1] Wyoming law provides a limited special hardship privilege for an employed motorist after a driver's license suspension. By a statutory interpretation, this decision denies appellant access to that opportunity following a non-job related conviction for a driving under the influence offense.

Conforming with the majority analysis, Robert E. Wilson, a licensed commercial truck driver, was convicted of driving under the influence during use of his private car in non-work activities. Wyo. Stat. § 31–5–233 (1989). Commercial driving and his existent qualification under federal and state statutes to operate commercial vehicles were not involved in the incident.

Wilson applied for a probationary work privilege for his non-commercial license so that disqualification would not be applied allowing him to continue under the hardship proviso in commercial trucking. He received the hardship exception from suspension, but accompanied with a decision that his right to commercially drive would not be benefitted by the remission of suspension. The result then achieved is that even though the driver can secure the probationary work privilege since his license to drive is subject to a suspension activity, he is disqualified by federal and state statutes from commercial vehicle operation.

I do not find any system of statutory construction, including plain meaning, *Allied–Signal, Inc. v. Wyoming State Bd. of*

1. Wyoming's Uniform Commercial Driver License Act also includes an exemption from any coverage for individuals involved in farm and ranch operations, operating fire fighting equipment or military personnel. Wyo. Stat. § 31–17–106 (1989).

*Equalization,* 813 P.2d 214 (Wyo.1991), Urbigkit, C.J., specially concurring, that justifies the extensive judicial construction resulting in this interpretation. I am supported in this view by an equal protection concern and special legislation question. Wyo. Const. art. 3, § 27; *Johnson v. Hearing Examiner,* 838 P.2d 158 (Wyo.1992).

As an example to illustrate this discriminatory effect, four people attend a birthday function at a liquor establishment for a common friend. Those include a route salesman, a state employee who travels extensively, a beet hauler for a local farmer, and a commercial long-haul truck driver. If each, following the party, were to be arrested and convicted of driving under the influence, decisively different penalties would apply where the hardship proviso would be available to three but not to the fourth participant. Those three benefitted are subject to the ninety day suspension of Wyo. Stat. § 31–5–233 and § 31–7–128 (Supp.1992) since they drive regularly in work activities. If none of the three have a prior violation, they are afforded the opportunity to ask for the special work privilege of Wyo. Stat. § 31–7–105 (Supp.1992) and can consequently maintain employment.

Joe truck driver, however, has a worse problem. Even though he has the right to apply for the special hardship privilege of Wyo. Stat. § 31–7–105, his non-involved commercial vehicle operation authority is revoked and his access to continued employment is foreclosed during the suspension period with hardship remission.

I neither directly nor indirectly find persuasive evidence of legislative intent to create this higher exposure for this one class of worker when compared to all of the rest of the citizenry involved in the use of motor vehicles in work activities. Many spend an equivalent percentage of their work career in a vehicle as does a commercial truck driver. Fairness and equality would provide the same rehabilatory punishment upon the non-commercial drivers. None should be excused, but each should be subject to an identical penalty. The one class,

commercial drivers, designated only because it requires both a state driver's license for any vehicle operation and a commercial driving authority for their own particular occupation, is not by any observable legislative intent singled out for a resulting severity of penalty.

If we were to seek a fair and realistic plain meaning, another answer is available. I conclude that the granting of driving to work privilege of Wyo. Stat. § 31–7–105 applies equally to Wyo. Stat. § 31–17–104 (1989) since the privilege to drive is not suspended from work pursuits under the controlling statute. As to employment driving, the driver's license is not suspended, revoked or canceled.

It should be clear from a plain meaning legislative interpretation or otherwise the legislature could have provided that the limited driving privilege of Wyo. Stat. § 31–7–105(f) should never be applied to the commercial driver. In specific terms, the suspension for commercial driving denying the hardship remission privilege only results from an offense during commercial driving. *See* Wyo. Stat. § 31–7–105(f)(iv)(F), § 31–17–111 (1989) and § 31–17–113 (1989). The majority, by its interpretation, takes the exclusion from availability of a hardship driving privilege (on the job conduct of Wyo. Stat. § 31–17–111, § 31–17–113), as provided in Wyo. Stat. § 31–7–105(f)(iv)(F), as a disqualification and extends the text by interpretation to the non-designated, non-included statutory provision found in Wyo. Stat. § 31–17–105 (1989). The issue is whether the legislature intended absolute liability without opportunity for probationary exception to extend beyond the commercial driving activities to the non-commercial, social driving activities if the license holder happens to require the commercial license qualification. I do not find that purpose clearly stated in the totality of the legislation involved here. *Allied–Signal, Inc.,* 813 P.2d 214. The specificity of the statute does not provide room for this court's constructive expansion.[2]

**2.** Federal law provides for a twenty-four hour

out-of-service penalty in cases where a commer-

The source of the present Wyoming Uniform Commercial Driver License Act was congressional enactment of 49 U.S.C.S. Appx. § 2701 through § 2716 (1990). *See also* 49 CFR 386 and 392.5 (1991). Neither litigant nor the majority opinion cite a single federal or other jurisdictional case which addresses the relationship of the commercial driver's license statute to a non-commercial driving suspension penalty. *See* Wyo. Stat. § 31–7–101 through § 31–7–202 (1989 & Supp.1992), involving the Wyoming general driver's license statute, and specifically the hardship driving provisions of Wyo. Stat. § 31–7–105(f).

Careful examination of federal statutes and the CFR supplementation, in conjunction with the identically written Wyoming statutes to track federal law, reveal three events which deny the commercial driver a right to occupational pursuit. The first is the one at issue here. This is a commercial driver whose driver's license is suspended, revoked or canceled under general state law where he may obtain a hardship work remission under , Wyo. Stat. § 31–7–105. The second is a loss under state statute of the right to drive a commercial vehicle, Wyo. Stat. § 31–17–111, and the third is the general federal disqualification statute, 49 U.S.C.S. Appx. § 2707.

Clearly, the first is driver's license suspension or revocation and the last two are prohibitions against operating a commercial vehicle. 49 U.S.C.S. Appx. § 2703; Wyo. Stat. § 31–17–103(b) (1989). It is just as clear that the prohibition against driving under the first event should extend no further than its limiting provisions exist for *any* driving, whether commercial, at work, or social.

The validity of this conclusion is demonstrated by the specific provisions of Wyoming statutes which include authority generally for the limited driving privilege (the hardship clause). Wyo. Stat. § 31–7–105(f). The introductory provision in the section applies its provisions not only to that general statute, Wyo. Stat. § 31–7–101 through § 31–7–202, but also to the disqualification concept provided by Wyo. Stat. § 31–17–111 and § 31–17–113. Wyo. Stat. § 31–7–105(d), which includes the requirement for a hearing "to receive limited driving privileges," includes reference to the Commercial Driver's License Act and then adds a further provision that as to *disqualification under the federal-state law,* no hardship privilege is granted. *See* Wyo. Stat. § 31–17–103(b); 49 U.S.C.S. Appx. § 2702(b); and 49 U.S.C.S. Appx. § 2703(1). The driver's license suspension preclusion applies to the act of driving while, conversely, the federal-state law commercial driver's statute applies to the right to operate a commercial vehicle or consequent disqualification.

This examination of the relevant statutes leads to an analysis that: (1) driver's license suspensions or revocations are ameliorated by the hardship provision of Wyo. Stat. § 31–7–105(f); and (2) disqualification results only from commercial driving activities, 49 U.S.C.S. Appx. § 2707; 49 CFR 383, subpart D, and 383.51; Wyo. Stat. § 31–17–111 and § 31–17–113.

The majority opinion legislates the result not contemplated by the federal or state language by finding that the hardship proviso in suspension is not only ineffective as to disqualification under the Uniform Commercial Driver License Act, but is also ineffective where loss of driving privilege for the commercial driver results from the general suspension of his driver's license for any reason.[3]

cial driver, during work, is found to have consumed *any* alcoholic beverage during or within the previous four hours before driving started. 49 U.S.C.S. Appx. § 2707(d) (1990); 49 CFR 392.5 (1991).

**3.** The only authoritative discussion provided within this record is found in correspondence where the Attorney General's office addresses an offered and later withdrawn settlement arrangement for the case accepting extension of the hardship proviso to commercial drivers. Unfortunately for appellant, the trial court ruled before the stipulated dismissal became final and the Attorney General's office then withdrew its stipulated agreement. The letter, addressed to the trial judge hearing the administrative review, stated in part:

This letter is to clarify the position of the Attorney General concerning the above cases. Prior to receiving your orders affirming the ruling of the hearing examiner, the State had

I would accept as reliable the concept which fits within the structure of the statutes as initially recognized within the Attorney General's communication. Furthermore, no precedent or administrative directives have since been provided by the litigants or found in opinion writing to tell this court of any single additional jurisdiction, including federal authorities and state licensing agencies, that has adopted the federal-state law statutory interpretation created by this majority decision.

I dissent.

agreed to have the above two cases, and two Park County cases involving the same issue, remanded to the hearing examiner to grant limited driving privileges to operate a commercial vehicle.

At the time the State agreed to stipulate, there were no judicial determinations on the issue, and the Department of Transportation considered the issue still open for administrative resolution. The State agreed to stipulate based on informal information, from the Federal Department of Transportation and from other states. The U.S. Department of Transportation issued informal opinions that the Federal Motor Carrier Safety Regulations do not prohibit states from granting limited driving privileges to operate a commercial vehicle if a driver receives a DWUI in a personal vehicle. Consequently, certain states grant limited driving privileges to operate a commercial vehicle so long as the underlying DWUI did not occur in a commercial vehicle. To provide uniform enforcement and consistent administration, it was decided that Wyoming would take a similar position.

Before the stipulations in the four pending appeals were fully implemented, we received your decision on the merits of the above two cases. The Office of the Attorney General has considered your decisions and is in full agreement with your ruling. It is the opinion of this office that the decisions are binding on the Department of Transportation. To achieve uniform enforcement of the judicial determinations, the State will request to withdraw its stipulations in the two appeals pending in Park County.