## In re WESTERN STATES DISTRIBUTORS, INC., Debtor.

**Bankruptcy No. 90 B 2274 J.**

United States Bankruptcy Court, D. Colorado.

March 15, 1995.

Alice J. Fischer, Asst. City Atty., for City and County of Denver.

John Fitzgibbons, Trustee, pro se, Denver, CO.

Wendy S. Wagner, Rubner & Kutner P.C., Denver, CO, for claimant Rubner & Kutner, P.C.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came on for hearing on February 22, 1995, on the City and County of Denver's ("City") Motion for Payment of Chapter 11 Administrative Expenses and the Trustee's Objection thereto. At the conclusion of the hearing, the Court directed that, because it had not received sufficient notice of the hearing, Rubner & Kutner, P.C. ("RK"), an administrative priority claimant herein, could file a brief and that the City & County of Denver could file a reply brief. The briefs are filed and the matter is at issue. The briefs were somewhat confusing because RK referred to § 507(a)(8) and the City referred to § 507(a)(7). That discrepancy was due to the 1994 amendments to the Bankruptcy Code which changed the refer-

ence from § 507(a)(7) to § 507(a)(8). However, the text of that section was left unchanged. In this opinion, the Court will use the old reference of § 507(a)(7) because that is how the statute was denominated at the relevant times herein.

This case was originally filed on February 28, 1990, as a Chapter 11 case. On August 13, 1991, the case was converted to Chapter 7.

### 1990 Taxes

The City seeks to have its claim for 1990 and 1991 *ad valorem* personal property taxes allowed as an administrative priority under 11 U.S.C. §§ 503(b) and 507(a)(1). Section 503(b)(1)(B) provides as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including ... (1)(B) any tax—(i) incurred by the estate, except a tax of a kind specified in section 507(a)(7) of this title; ...

Section 507(a)(7) provides that claims falling within this section have an Eighth priority and reads as follows:

> (a) The following expenses and claims have priority in the following order: ... (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for ... (B) a property tax assessed before the commencement of the case and last payable without penalty after one year before the date of the filing of the petition ...

The First inquiry is whether these particular property taxes were *incurred by the estate.*

All the parties have cited the case of *In re Brent Explorations, Inc.,* 91 B.R. 104 (Bankr.Colo.1988). But that case is inapposite. In that case the Court was relying on the interpretation of Wyoming law by the Supreme Court of Wyoming as set forth in *Wyoming Department of Revenue v. First Wyoming Bank N.A.,* 718 P.2d 31 (Wyo. 1986). There, the Wyoming Supreme Court held that because of the wording of the state sales tax statute, the taxing authority must

take the affirmative act of recording its lien in the public records before any sales tax lien is perfected, and that such a tax lien's priority is then determined by the state's recording statutes. There is no such requirement for recording a tax lien in the public records in Colorado.

■ Under 11 U.S.C. § 362(b)(3) the automatic stay does not apply to "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to perfection under section 546(b)." Section 546(b), in turn, exempts from the trustee's avoidance powers "any generally applicable law that permits the perfection of an *interest in property* to be effective against an entity that acquires rights in such property before the date of such perfection." [Emphasis added]. Thus, the question is did the City acquire an *interest* in the personal property prior to February 28, 1990 (the date of the Chapter 11 petition). I hold that it did acquire an interest at 12 noon on January 1, 1990.

Colorado statutes provide that a lien for such taxes arises at 12 noon on the assessment date for the current year and that such a lien shall be a perpetual lien. C.R.S. § 39–1–107. The "assessment date" is specified as 12 noon on the first day of January of each year. C.R.S. § 39–1–105. Colorado case law holds that such "lien does not become effective nor is its value known until the property is assessed and the taxes levied, at which time the theretofore inchoate lien relates back and attaches as of the date authorized for assessment." *Martin, et al. v. Board of Assessment Appeals, et al.,* 707 P.2d 348 at 354 (Colo.1985); *Wolf v. Antonoff,* 161 Colo. 473, 423 P.2d 840 (1967); *City and County of Denver v. Tax Research Bureau,* 101 Colo. 140, 71 P.2d 809 (1937). Thus, the *interest* acquired by the City was an inchoate lien. It is true that the lien was not perfected until the property was valued, the value certified, and the taxes levied later in that same year. But under §§ 362(b)(3) and 546(b), the City was allowed to complete those tasks and thus

perfect its lien, which lien related back to 12 noon on January 1, 1990. Thus, the personal property taxes for the year 1990 were a pre-petition secured claim.

■ Because the City had a perfected tax lien on the personal property effective January 1, 1990, it means that such tax was *incurred* by the Debtor prior to the bankruptcy petition. It was not *incurred by the estate* as required by § 503(b)(1)(B), and therefore the City is not entitled to an administrative priority under § 507(a)(1).[1] There is no necessity to look further, especially to look at § 507(a)(7).

■ Apparently the subject property is no longer in the bankruptcy estate. Where it went, and when, is not known to the Court. But the City did nothing to protect its security interest in the property during the course of the bankruptcy proceeding. If the property is no longer available, then the City is relegated to a general unsecured claim for the 1990 taxes. That claim is so allowed in the sum of $3,714.00 for taxes, $223.00 for interest, and $100.00 for penalties.

### 1991 Taxes

■ Likewise, the 1991 personal property taxes became an inchoate lien on January 1, 1991, and were *incurred by the estate* on that date while the case was still under Chapter 11. Therefore, the City's claim for 1991 taxes is allowed as a § 503(b)(1)(B)(i) administrative expense. As such, the City is entitled to a first priority under § 507(a)(1), and shall share pro rata with all other like priority claimants. That claim is so allowed in the sum of $2,747.00 for taxes. It is, therefore,

ORDERED that the claim of the City and County of Denver for 1990 personal property taxes is allowed as a general unsecured claim only in the total sum of $4,037.00; and for 1991 personal property taxes is allowed as a

---

1. Although dealing with different, but similar state statutes, the Courts in *In re Parr Meadows Racing Association, Inc.,* 880 F.2d 1540 (2nd Cir.1989); *In re Columbia Gas Transmission Corp.,* 37 F.3d 982 (3d Cir.1994); *In re Members*

*Warehouse,* 991 F.2d 116 (4th Cir.1993); and *In re Midland Industrial Service Corp.,* 35 F.3d 164 (5th Cir.1994), reached substantially the same result.

first priority claim under 11 U.S.C. §§ 503(b)(1)(B)(i) and 507(a)(1) $2,747.00.